We granted certiorari review in this case to address the issue of whether the petitioner, a white male defendant, had standing, under the principles of Batson v. Kentucky,476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), to claim that the prosecutor's alleged use of peremptory challenges to remove black jurors from the trial venire violated his constitutional rights.[1]
The Court of Criminal Appeals, stating what it thought to be the law, held that a "nonblack" defendant could not raise aBatson challenge, but did note that "the standard articulated in Batson may be broadened at some future time." 594 So.2d 690
(1991). The Court of Criminal Appeals was prophetic in stating that the Batson principle might be broadened, because the Supreme Court of the United States, in Powers v. Ohio, ___ U.S. ___, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), did, in fact, broaden the class of defendants who could make a Batson claim when it held that a white defendant did have standing to raise a Batson issue. See, Ex parte Bird, [Ms. 89-1061, 89-1062, June 14, 1991], 1991 WL 114762 (Ala. 1991), in which this Court, following Powers, also held that a white defendant had standing to raise a Batson challenge.
Based on the authority of Powers and Bird, we hold that the Court of Criminal Appeals erred in holding that the petitioner did not have standing to raise a Batson challenge.
The State now recognizes the Powers doctrine. However, it argues that even though the petitioner may have had standing to raise a Batson issue, the petitioner did not present a prima facie case of discrimination in this case. We disagree.
The record affirmatively shows that the petitioner's counsel made a timely Batson objection and that the trial court specifically ruled that the petitioner lacked standing.[2] That is enough, since the trial court *Page 694 
would allow the petitioner to go no further. We, therefore, hold that the issue was timely and appropriately raised in the trial court.
The only possible question could be whether Powers should apply retroactively. We think, without question, that it does apply retroactively. In Griffith v. Kentucky, 479 U.S. 314,107 S.Ct. 708, 93 L.Ed.2d 649 (1987), the United States Supreme Court established the rule of retroactivity that courts should apply in cases, such as this one, that involve a rule of constitutional law not previously decided.[3] The Court, inGriffith, stated, "We therefore hold that a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or notyet final. . . ." Id. at 328, 107 S.Ct. at 716 (Emphasis added). In Linkletter v. Walker, 381 U.S. 618, 622 n. 5,85 S.Ct. 1731, 1734 n. 5, 14 L.Ed.2d 601 (1965), the Court explained that a judgment is "final" in a case "where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition of certiorari [to the United States Supreme Court] has elapsed before our [newly promulgated rule]." Based on the Griffith rule and theLinkletter definition, we must find that the Court of Criminal Appeals erred by not giving the petitioner the benefit ofPowers v. Ohio.
Because we find that the petitioner timely objected to the prosecutor's alleged use of his peremptory challenges in a racially discriminatory manner, we remand this cause to the Court of Criminal Appeals with directions to that Court to remand the cause to the trial court in accordance with the principles and guidelines set out in Ex parte Branch,526 So.2d 609 (Ala. 1987). *Page 695 
Because we remand the cause, we do not address the petitioner's contention that he was entitled to a judgment of acquittal.
REMANDED WITH DIRECTIONS.
HORNSBY, C.J., and SHORES, ADAMS, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.
[1] The petitioner argued to the trial court, and on appeal, that he was entitled to a judgment of acquittal because the evidence showed that he was acting merely as a "procuring agent" for the buyer and never possessed, "even momentarily," the cocaine that an agent of the State purchased from him. He again, on certiorari, raises the question whether the Court of Criminal Appeals erred in holding that his motion for judgment of acquittal was properly denied. We find it unnecessary to address that issue, in view of our holding here.
[2] The record shows that the following occurred: "MR. BOWLES: Judge, the last thing I would like to bring up, we would like to allege that the State in its selection of the jury violated the ruling in the Batson case by striking —
"THE COURT: Your client is not a minority.
 "MR. BOWLES: I know that, but we're raising the defense, the grounds that these people were good jurors, and they were struck for no reason other than their race.
 "THE COURT: Well, I mean, that's not applicable in your case. If what you say would apply, under no circumstances could minority members be struck.
"MR. BOWLES: Okay, I just —
 "THE COURT: You're not alleging your client is a member of a minority, are you?
"MR. BOWLES: No, sir.
"THE COURT: Okay.
"MR. BOWLES: But I just wanted to get my —
"THE COURT: Sure.
"MR. BOWLES: — objection on the record and —
 "THE COURT: Were your client a member of a minority, we would have a hearing —
"MR. BOWLES: Yes, sir.
 "THE COURT: — since he appears not to be and you say he's not —
 "MR. BOWLES: It is just our position to get the fact on the record, out of the twenty-four strikes, twenty-four people that the State and the Defense had to strike from, each side had six strikes and the State used four of their strikes to strike minorities, the last four.
"THE COURT: Are there any black people on the jury?
"MR. BOWLES: There are two.
 "THE COURT: They didn't strike all of them they could. Well, you've got to strike somebody for some unknown reason.
 "MR. BOWLES: I understand, but I think it has to be a race-neutral reason, even if my client is white.
 "THE COURT: Okay, that's fine. Your motion is on the record."
[3] Historically, the Court has gone from a three pronged, case-by-case analysis to a more comprehensive, categorical analysis, to a whole cloth retroactive application based on the present procedural stage of an individual case. In Linkletterv. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), the Court adopted a three-pronged test to be applied piecemeal. The test looked at: 1) the purpose of the new rule, 2) the extent of law enforcement reliance on the old rule, and 3) the effect retroactive application would have on judicial administration. Id. 381 U.S. at 636, 85 S.Ct. at 1741, Stovallv. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 1970,18 L.Ed.2d 1199 (1967).
A shift was then made in United States v. Johnson,457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982), to a more categorical approach. For example, in Johnson, the Court held that all new Fourth Amendment criminal procedure rules would automatically be applied retroactively to all cases not yet final, subject to three exceptions. In Shea v. Louisiana,470 U.S. 51, 105 S.Ct. 1065, 84 L.Ed.2d 38 (1985), a similar categorical rule was announced for the Fifth Amendment.
The rule of Griffith v. Kentucky, 479 U.S. 314, 328,107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987), eliminates the three exceptions noted in Johnson and establishes an across-the-board rule of retroactive application if the case at issue is still pending on direct review or is not final.