Colon L. Guthrie, the appellant, was indicted and convicted for the capital robbery-murder of Randal Pepper, in violation of Ala. Code 1975, § 13A-5-40(a)(2). Sentence was fixed at death by electrocution. That conviction and sentence are reversed because of a violation of Batson v. Kentucky, 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and Ex parte Branch,526 So.2d 609 (Ala. 1987).
 I. Batson v. Kentucky was decided on April 30, 1986. It held that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." Batson, 476 U.S. at 89, 106 S.Ct. at 1719. In order to establish a prima facie Equal Protection Clause violation in the discriminatory exclusion of petit jurors, the defendant "must show that he is a member of a cognizable racial group . . . and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race."Batson, 476 U.S. at 96, 106 S.Ct. at 1723. The guidelines for the implementation of Batson, at least for this state, were stated initially in Branch, supra.
In Holland v. Illinois, 493 U.S. 474, 110 S.Ct. 803,107 L.Ed.2d 905 (1990), the Supreme Court of the United States distinguished between violations of the Equal Protection Clause of the Fourteenth Amendment and violations of the Sixth Amendment of the Constitution of the United States. A plurality of that court decided that a white defendant has standing to raise a Sixth Amendment "fair cross section" challenge to the exclusion of blacks from the petit jury without showing that he is a member of the cognizable group excluded.493 U.S. at 475-77, 110 S.Ct. at 805-06. In his dissent in Holland, Justice Marshall observed:
 "As a majority of this Court has now concluded, a close reading of Batson shows that a defendant's race is irrelevant to his standing to raise the equal protection claim recognized in that case.
". . . .
 "In any event, the question whether a defendant's race affects his standing to invoke Batson is one on which the Court has not ruled. For the reader who seeks guidance on how the Court would rule if the issue were presented and argued, the agreement of five Justices that a defendant's race is irrelevant to the Fourteenth *Page 1015 
Amendment standing inquiry is far more illuminating than the majority's veiled intimations and cryptic turns of phrase."
Holland, 493 U.S. at 491-92, 110 S.Ct. at 813-14. See Mathis v.State, 594 So.2d 690 (Ala.Cr.App. 1991) (Bowen, J., dissenting), remanded, Ex parte Mathis, 594 So.2d 692 (Ala. 1991). Holland was decided on January 22, 1990.
The appellant's trial began on March 19, 1990. At the conclusion of the striking of the jury, the appellant, citingBatson v. Kentucky, made specific objection to the prosecutor's use of his peremptory strikes to remove ten of the twelve black members of the jury venire. In response, the prosecutor maintained that the appellant did not have standing to object because he was white and that the appellant had failed to establish a prima facie case of racial discrimination. The trial court stated:
 "The Court finds there has been no purposeful prima facie showing of purposeful discrimination by the State. And the Court does recognize the defendant is of the Caucasian race and the defendant has not made out a prima facie case for discrimination." R. 730.
Clearly, if the appellant did not have standing to object, he could not present a prima facie case of discrimination.
 "The record affirmatively shows that petitioner's counsel made a timely Batson objection and that the trial court specifically ruled that petitioner lacked standing. That is enough, since the trial court would allow the petitioner to go no further. We, therefore, hold that the issue was timely and appropriately raised in the trial court."
Ex parte Mathis, 594 So.2d 692 (Ala. 1991).
In ruling that the white appellant did not have standing to object to the prosecution's use of peremptory strikes against black venire members, the trial court was applying the law as it was generally understood to exist at that time. See Ex parteBankhead, [Ms. 89-1179, February 15, 1991][1] stating: "As the law currently stands, the defendant's group identity must correlate with the identity of the group excluded from the jury in order to establish an equal protection claim."
The appellant was sentenced on April 9, 1990. On April 5, 1990, the State, "in light of the recent United States Supreme Court case of Holland v. Illinois," filed a motion to supplement the record "by adding thereto the State's race neutral reasons for striking certain prospective jurors from the venire." CR. 197.
On May 3, 1990, a hearing was held on that motion. At that hearing, the prosecution maintained its position that the appellant had failed to establish a prima facie case of racial discrimination. However, the prosecutor went forward and gave the following reasons for its ten strikes against black members of the venire.
 1. Wanda F. Bonner, a 26-year-old black female, was struck "due to information that the State had that she was related to Derrick Bonner, who is an individual that we had prosecuted on a felony criminal case. And we felt like for that reason, she might have some hard feelings or some residual hard feelings toward the State and might be prejudiced toward us if she sat as a juror in this case." R. 1732.
 2. Willa V. Gunn, a 39-year-old black female, was struck "due to the fact that we had information that she was an aunt to a Victor LaShawn Gunn, who was prosecuted during the past year by the district attorney's officer. And in fact, may have on one occasion, appeared here in court with him. And we felt like that due to that relationship to him that she might be prejudiced toward the State or have some residual hard feelings toward the State, which would render her not a fair and impartial juror in this particular case." R. 1732-33.
 3. James Hall, a 33-year-old black male, was struck "due to the fact that he was unemployed, and also due to some *Page 1016 
statements that he made regarding capital punishment. From the statements that he made — first of all, we asked if there was anyone on the venire who had general reservations about the imposition of the death penalty and he raised his hand at that time. And he stated something that I wasn't really sure of what he said, the record may bear out exactly what his comments were, but later on individual voir dire, he stated something to the effect that he had — the only significant decisions he had made during his lifetime were obtaining a driver's license and doing what he was told in the army. And I took from that that he was implying that he didn't feel that he had the — that he could make a decision as to whether a person should — to recommend whether a person should live or die. With regard to the unemployment question, the striking of No. 29 is consistent with the State's agreement to release Juror No. 76, who was a white juror, who was also unemployed. . . ." R. 1733-34. 4. Shirley A. Hankins, a 37-year-old black female, was struck because "the State has information that she was a sister-in-law to Dora Mae Hankins, who is a person who had a case pending on the docket at that particular time; a charge of theft by fraudulent leasing, a case that has been recently disposed of. And we felt due to the fact she had a relative who had a case pending on the docket at that time that she might be prejudiced toward the State and might have some residual hard feelings toward the State and might not be a fair and impartial juror due to that fact." R. 1734.
 5. Willie E. Jackson, a 41-year-old black male, was struck because "[o]ur information indicates that he is related to Willie C. Jackson, in fact, has the same address. And my information doesn't indicate what their relationship is, but they live at the same address, who has an alias or who had at the time of the trial of this case, an alias warrant pending against him in a DUI case where he had failed to appear in court. And we felt due to that fact he might have some residual hard feelings and might be prejudiced and might not be — he might be rendered not a fair and impartial juror due to his relationship with this individual." R. 1734-35
 6. Edward Jones, a 59-year-old black male, was struck because "we had information that he was related to a Hosea Jones, Jr., excuse me, Sr., who — and also Hosea Jones, Jr. but a Hosea Jones, Sr. that we had prosecuted in a drug case just recently and who is on probation at this time. And we felt that due to this relationship that he might not be a fair and impartial juror in this particular case." R. 1735
 7. Kenneth L. Mitchell, a 34-year-old black male, was struck "due to the fact in voir dire examination, he indicated that he had read an article in the Times-Daily Newspaper which was published on Monday which contained in the last paragraph some pretty negative information with regard to the case, and which may have been prejudicial to the State. And we also, consistent with that, struck Juror No. 47, who was a white juror, we struck that person for the same reason — due to the fact they had read that article, which contained that negative information." R. 1735.
 8. Willie L. Robinson, a 72-year-old black male, was struck "due to several questions that we asked that indicated he might have a hearing problem and he didn't respond or the response wasn't — or didn't appear to be responsive to the questions that we asked. And consistent with that particular reason for striking Mr. Robinson, we also had the intention of striking Juror No. 11, who was a white individual, who also indicated that he had a hearing problem — Mr. Allison. But he was struck by the defense as their 7th strike." R. 1735-36.
 9. Maureen Thompson, a 34-year-old black female, was struck because she "indicated in individual voir dire that she had some reservations about the death penalty. She said she could in a particular case vote to impose the death penalty, but she also indicated that it would be *Page 1017 
very difficult for her to, that it would be a hard decision. And she had also responded earlier, the reason that I voir dired her individually with regard to capital punishment was due to the fact she had earlier indicated some general reservations about the appropriateness of the death penalty. And we felt like due to that fact, she might be weak on the issue of the death penalty." R. 1736.
 10. Terilyn Whiteside, a 22-year-old black female, "was struck due to the fact that our information and the information on the jury list indicated that she was unemployed. And that was also consistent with our agreement to release from the jury Juror No. 76 that I mentioned earlier, Mr. Tidmore, who was a white juror who was also in that same category of being unemployed. We quite frequently strike the unemployed individuals from a case." R. 1736-1737.
After listing these reasons, the prosecutor made the following statement:
 "[W]e wouldn't have had any reason to have acted discriminatorily with regard to strikes in this case. In fact, if there were any racial motive in this case, this being a white defendant, it would probably have been the reverse, we would have wanted more — I mean if that had been our motive, we would have wanted more members of minority groups on this particular case if we were looking in some way to prejudice the defendant by the racial composition of the jury. All of our reasons for striking were totally race neutral and there was no racial motive in any of the strikes that we made." R. 1737.
Defense counsel objected to the State's being allowed at such a late date to supplement the record by giving its reasons for the exercise of its peremptory strikes. The trial court responded, "The Court has already ruled in this matter and I'm just allowing him —." R. 1739.
The appellant then called venire member Willa V. Gunn (see # 2 above) to the witness stand. She testified that she was not related to and did not even know Victor LaShawn Gunn. She further testified that she bore no prejudice towards the district attorney's office because of some problem they had had with Victor Gunn.
The defense also established that the prosecution had removed unemployed black members from the jury venire, while leaving on the venire whites who were unemployed but who had listed either "housewife" or "retired" as their occupation.
In response, the prosecutor argued that the court had ruled that the appellant had failed to establish a prima facie case, that the appellant was not a minority member, that the reasons given by the State were appropriate and were made in good faith, and that there is a distinction between housewives and retired persons and unemployed individuals. The trial court stated: "The Court has previously ruled on this and has allowed both sides to put on the record anything they wanted to put on for a higher court to look at. I still hold to the same ruling." R. 1755.
The trial court erred in ruling that the appellant did not have standing to object. Powers v. Ohio, ___ U.S. ___,111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), was decided April 1, 1991. That case held that a white criminal defendant has standing under the Equal Protection Clause of the Fourteenth Amendment to challenge the prosecution's use of peremptory strikes of black venire-members. In response to Powers, the Alabama Supreme Court withdrew its opinion in Ex parte Bankhead, [Ms. 89-1179, February 15, 1991], and adopted the position taken inPowers, Ex parte Bankhead, 585 So.2d 112 (Ala. 1991). It is now clear that, under both federal and state constitutional law, a white defendant has standing to challenge the prosecutor's allegedly racially motivated use of a peremptory challenge.Powers v. Ohio, supra; Ex parte Bankhead, 585 So.2d 112;Ex parte Bird and Warner, [Ms. 89-1061 and 89-1062, June 14, 1991] (Ala. 1991).* See Ex parte Mathis, 594 So.2d 692 (Ala. 1991). *Page 1018 
Those cases must be applied retro-actively to cases pending on direct appeal. "[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." Griffith v. Kentucky, 479 U.S. 314, 328,107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987). In Ex parte Jackson,516 So.2d 768, 772 (Ala. 1986), the Alabama Supreme Court, without awaiting direction from the United States Supreme Court on this particular issue, "held as a matter of Alabama constitutional law that this 'Batson test' would be applied retroactively to cases pending on direct appeal." Ex partePenn, 539 So.2d 319, 320 (Ala. 1987). See also Ex parte Love,507 So.2d 979, 980 (Ala. 1987) (Batson should not be applied retroactively on collateral review of convictions that became final prior to its announcement); Ex parte Dorsey,545 So.2d 106 (Ala. 1989) ("We hold that in pre-Batson cases, the issue must have been raised in order to be preserved for review."). "In Griffith v. Kentucky, [479 U.S. 314, 107 S.Ct. 708,93 L.Ed.2d 649 (1987)], the Supreme Court addressed the retroactive application of Batson, and held that Batson would apply to all cases that were still pending on direct appeal and were not 'final' at the time Batson was decided." Ex parteFloyd, 571 So.2d 1234, 1236 (Ala. 1990) (footnote omitted).
In Jackson v. State, 594 So.2d 1289 (Ala.Cr.App. 1991), this Court held:
 "Powers unquestionably establishes that a white defendant has standing to challenge the prosecutor's use of peremptory strikes to remove blacks from the jury venire. See Ex parte Bird and Warner, 594 So.2d 676, 685 (Ala. 1991); Ex parte Bankhead, 585 So.2d 112 (Ala. 1991). Powers, like Batson, is to be applied retroactively. Cf. Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987); Allen v. Hardy, 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986); Ex parte Jackson, 516 So.2d 768, 772 (Ala. 1986)."
See People v. Pecor, 213 Ill. App.3d 472, 157 Ill.Dec. 600,572 N.E.2d 1064, 1066 (1991). Recently, in Ex parte Mathis, supra, the Alabama Supreme Court held that "without question, [Powers] does apply retroactively."
Not only did the trial court err in ruling that the appellant did not have standing to object, it also erred in holding that the appellant had failed to establish a prima facie case of racial discrimination in the prosecution's use of its peremptory strikes.
The general rule in Alabama is that "a defendant cannot prove a prima facie case of purposeful discrimination solely from the fact that the prosecutor struck one or more blacks from his jury." Harrell v. State, 571 So.2d 1270, 1271 (Ala. 1990), cert. denied, ___ U.S. ___, 111 S.Ct. 1641, 113 L.Ed.2d 736
(1991) (emphasis in original) (prosecutor's use of five of eight strikes to remove blacks constitutes prima facie case when considered with "additional facts" of limited voir dire by prosecutor and prosecutor's past conduct in using peremptory challenges to strike blacks). See also Harrell v. State,555 So.2d 263, 266 (Ala. 1989), noting that " '[t]he most troubling aspect of the prima facie inquiry arises when the only relevant circumstance is the number of minority jurors removed from the jury. . . . Decisions based upon numbers alone necessarily assume a somewhat arbitrary character and are a major reason for the often contradictory outcomes in lower court decisions.' " In Ex parte Williams, 571 So.2d 987, 990 (Ala. 1990), the Alabama Supreme Court held that the defendant's "evidence that the State struck four of the five black venire members is sufficient evidence of discrimination to establish her prima facie case for discrimination. Branch, 526 So.2d at 622-23."
However, often the fact that the prosecution used a significant percentage of its strikes to remove most of the black members of the venire will be sufficient to establish a prima facie case of discrimination *Page 1019 
by the prosecution in the use of its peremptory strikes, especially when considered in conjunction with the manner and extent of the prosecutor's voir dire questioning. We find that of the factors listed in Branch as being "illustrative of the types of evidence that can be used to raise the inference of discrimination," the following are significant in this particular case.
 "2. A pattern of strikes against black jurors on the particular venire; e.g., 4 of 6 peremptory challenges were used to strike black jurors.
". . . .
 "4. The type and manner of the state's attorney's questions and statements during voir dire, including nothing more than desultory voir dire.
 "5. The type and manner of questions directed to the challenged juror, including a lack of questions, or a lack of meaningful questions.
". . . .
 "9. The state used peremptory challenges to dismiss all or most black jurors."
Branch, 526 So.2d at 622-23 (citations omitted).
In Branch, 526 So.2d at 610, 627, the State's use of six of seven peremptory strikes to remove six of the seven blacks from the venire was sufficient to cause the case to be remanded for further proceedings. See also Ray Sumlin Construction Co. v.Moore, 583 So.2d 1320, 1321-22 (Ala. 1991) (evidence that defendant in civil action used its eight peremptory strikes to remove eight of nine black venire members was sufficient to prove prima facie case of Batson discrimination). In Ex parteBird and Warner, 594 So.2d 676 (Ala. 1991), the State's use of 17 of its 20 peremptory strikes to eliminate 17 of the 19 black venire members, coupled with other factors, resulted in a violation of Batson.
In this case there were 15 blacks on the venire, which originally consisted of 82 members. Thus, approximately 18% of the venire was composed of blacks. We note that the venire list indicates the race of each member. Three blacks were struck for cause, so that blacks composed 23% of the strike list. The appellant used one peremptory strike against a black. One black sat on the jury making the black representation on the jury approximately 8%. In Bird and Warner, 19 black veniremembers comprised 36% of the venire but only 8% of the jury (one juror). The court noted:
 "Here, however, the suspicion of discriminatory intent raised by the disparately meager representation of black jurors is convincingly reinforced by the fact that the prosecutrix used 85% of her peremptory challenges, that is, 17 of 20 strikes to eliminate 89% of the black veniremembers. See Branch, 526 So.2d at 623; Slappy v. State, 503 So.2d 350, 355 (Fla.Dist.Ct.App. 1987)."
In the present case, the prosecutor used 50% of his peremptory challenges, that is 10 of 20 strikes, to eliminate 83% (10 of 12) of the black veniremembers.
Extremely significant in this case, and at the heart of the reason why this case must be reversed, is the prosecutor's failure to engage in any meaningful voir dire.
 "[T]he failure of the State to engage in any meaningful voir dire on a subject of alleged concern is evidence that the explanation is a sham and a pretext for discrimination. Branch, 526 So.2d at 623; see also People v. Wheeler, 22 Cal.3d 258, 281, 583 P.2d 748, 764, 148 Cal.Rptr. 890, 905
(1978); Slappy v. State, 503 So.2d 350, 355 (Fla. Dist. Ct. App. 1987). Thus, if the prosecut[or] thinks that a veniremember may be related to a former defendant, she [or he] must ask the veniremember. See State v. Aragon, 109 N.M. 197, 784 P.2d 16, 17 (1989); see also Floyd v. State, 539 So.2d 357, 363 (Ala.Crim.App. 1987) (mere suspicion of a relationship insufficient); Note
[Batson v. Kentucky and the Prosecutorial Peremptory Challenge: Arbitrary and Capricious Equal Protection, 74 Va.L.Rev. 811 (1988)] at 827 ('prosecutor's self-imposed ignorance [should not] preclude a Batson claim').
 "Here, a simple question directed to the veniremember could have dispelled any doubt about a possible relationship. *Page 1020 
However, neither the State nor the court engaged in any voir dire on this subject. In the absence of any examination, the trial judge had nothing on which to make the required 'sincere and reasonable effort to evaluate the evidence and explanations based on the circumstances as he [knew] them.' Branch, 526 So.2d at 624. In reality, he had nothing on which to base an evaluation of the proffered rationale except the averment of the prosecut[or], which, in substance, amounted to a 'mere general assertion' of nondiscrimination. See Batson, 476 U.S. at 94 [106 S.Ct. at 1721-22]."
Ex parte Bird and Warner, 594 So.2d at 683 (emphasis added).
Although there was a lengthy voir dire of the venire in this case, the prosecutor did not ask any question about the relationships made the basis for his peremptory strikes of veniremembers 1, 2, 4, 5, and 6 listed above. The prosecutor's stated basis for his information concerning the various relationships of the veniremembers is vague and suspect. The appellant proved that the prosecutor's information concerning one veniremember was incorrect. Consequently, the reasons given for those strikes were not sufficient to rebut the prima facie case of discrimination established by the appellant.Branch, 526 So.2d at 623.
The importance of a thorough voir dire has repeatedly been stressed by the appellate courts of this state. See, e.g.,Jackson v. State, 557 So.2d 855, 857 (Ala.Cr.App. 1990) ("We reiterate that the fact that the black jurors who were challenged without being examined on voir dire in reference to possible bias because of their employment, position in society, age, and residence raises a strong inference that they were excluded on the basis of race alone.") Here, the total lack of questioning to the challenged veniremembers concerning the basis for the challenges is fatal.
In view of the fact that the prosecution waited until after trial to present any reasons for its action, further comment by the court in Bird and Warner, supra is applicable here:
 "By now, the State is well aware of the fact that it will be called upon to justify its peremptory challenges. Consequently, it elicits no surprise that a seasoned prosecutor could muster a colorably race-neutral explanation. Developments — Race And The Criminal Process, 101 Harv.L.Rev. 1472, 1581 (1988). Thus, the inability of the prosecut[or] to articulate more convincing reasons for this strike is particularly revealing."
Ex parte Bird and Warner, 594 So.2d at 684. Quite obviously, the State's attempt to "supplement the record" was improper. See Harrell, 555 So.2d at 268.
Under the cases we have cited, this case must be reversed. Because the Batson issue is dispositive, we will not consider the other issues raised on this appeal.
The judgment of the circuit court is reversed and this cause is remanded for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
All Judges concur.
[1] This opinion was withdrawn on May 24, 1991, and another opinion substituted therefor. Ex parte Bankhead, 585 So.2d 112
(Ala. 1991).
* Reporter of Decisions' Note: The June 14, 1991, opinion inBird was withdrawn and a new opinion issued on December 6, 1991, 594 So.2d 676.