The defendant, Joe Louis Harrell, was convicted of possession of cocaine and other offenses in Mobile Circuit Court. He challenges that conviction, based upon the rule of law stated in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712,90 L.Ed.2d 69 (1986). *Page 264 
Harrell was allegedly seen at a Mobile area "skin house" (local slang for a gambling establishment) by two Mobile police officers who had entered the premises without a search warrant. The officers forced the occupants of the premises to stand along a wall while they searched for contraband. Several persons were in the house at this time, and there was money lying out in plain view on a table. According to the officers, that money was being used in a card game when they walked in. Although no arrests were made at this time, the officers alleged that Harrell was seen reaching under a table as if to retrieve something hidden there.
The officers left the "skin house" without incident but stayed close by. One officer began to circle the block on which the skin house was located. A short time later, Harrell was seen standing near a car on the street. As the officer approached in his patrol car, Harrell allegedly "hollered something" and then jumped into the car and attempted to speed away from the scene. The officer gave chase; he testified that he saw Harrell throw several articles out of the car during the chase. The officer further stated that he stopped and picked up these articles and then proceeded with the chase. The car was stopped some blocks later. Harrell had exited the car but was apprehended on foot a short distance away by another police officer.
The packages Harrell allegedly threw out of the car contained cocaine powder, crack cocaine, and marijuana. He was indicted on charges of possession of cocaine under Code 1975, §13A-12-212(a) 1, and possession of marijuana under Code 1975, §13A-12-213(a) 1. On June 8, 1988, the case came up for jury selection and trial.
Jury selection was not made a part of the recorded transcript of the proceedings. Harrell's defense counsel objected to the composition of the jury as empaneled, on the basis ofBatson v. Kentucky, supra. Defense counsel's objection was apparently overruled at a sidebar conference held off the record. The trial judge said that the Batson objection would be taken up at the next recess, but there was no further inquiry at that point. The jury was then sworn, and the trial commenced.
The record shows that at the next recess, the following exchange took place:
 "THE COURT: The other thing, you had a Batson motion. You want to state it to the reporter? State your position.
 "MR. DEEN: Yes, sir. You want me to go ahead and do it now?
 "THE COURT: Go ahead and do it now and she can read. . . ."
"(The Judge exits the courtroom.)
 "MR. DEEN: The Defendant objects to the empaneling of this jury. My objection was reserved prior to the jury being sworn in and this is my opportunity to state the grounds.
 "There were twenty-eight people in the jury venire. Each side was allowed to have eight strikes. The Defendant is a black male on trial here and five of the State's strikes were of people of the black race.
 "The first strike was number 11, a black male, James Buford, who answered none of the questions during voir dire at all. The jury list shows that he's employed as a helper at Moyer Allied. So we assert the only reason for him being . . . stricken was because he happened to be a black male.
 "The State's second strike was number 12, Jesse Crook, who is a — the only question he answered in voir dire was that his brother or brother-in-law was in security with the Mobile Police Department. He was struck and we would assert that the only reason evidently he was struck was by virtue of his race.
 "Number 26, Margaret Powe, is a black female. She's listed as being a housewife. Her only question answered during voir dire is that she had been the victim of a burglary. We assert that the only reason that she was stricken was because of her race.
 "The State's fifth strike was Robert Watt, who is a mechanic, an employed mechanic with Auto Saving Tire Company. His only question answered in voir dire was that he had been on [a] jury before in a criminal case and found the *Page 265 
Defendant guilty. And we'd assert the only reason he was stricken was because of his race.
 "Strike number eight was a black female who had been a burglary victim. Her name was Jerry Dukes. She had a cousin who is a lawyer in the District of Columbia and she'd been on a jury this week on a criminal case and found the defendant guilty. We assert the only reason for her being stricken was by virtue of her race.
"MS. MURPHY: What number was that?
"MR. DEEN: Number 8.
 "Based on [Batson v. Kentucky] and those grounds asserted, we don't think that this is a fair and impartial group of folks to be sitting in trial of Mr. Harrell today.
 "MS. MURPHY: First of all let me say that I was given two minutes by the Judge to decide who to strike and who not to. Herman Thomas, an assistant district attorney with our office, was in here during the striking of this jury and I enlisted Herman's aid in striking the jury. Incidentally, Herman Thomas is black.
 "Some of these strikes Herman suggested to me because we didn't have much time and I just asked him to look down my list — and he's lived here for a long time — and pick out what was bad addresses, bad in the sense of high crime areas, areas where we probably would not want jurors for the State who perhaps might be sympathetic with the defendant. So some of those were based upon Mr. Thomas's suggestion based strictly from the review of the addresses on the jury list. It was not even indicated whether the potential juror was black or white.
 "Eleven and 12 were both struck because I asked the question during voir dire is there anybody who thinks that marihuana ought to be legalized. These two men were sitting side by side and they looked at each other and smiled. That's why they were struck.
 "Twenty-six struck at Mr. Thomas's suggestion based upon the address.
 "Twenty-seven same; struck at Mr. Thomas's suggestion based on the address shown.
 "And number 8 was struck because she was a social service aide and I thought that based upon that profession she might be a very good witness, or juror rather for the prosecution [sic — defense]."
As the record indicates, the trial judge took no part in the exchange between defense counsel and the prosecutor regarding the Batson issue. We can only conclude that the trial judge found that the defendant had failed to prove the prima facie case under Batson at the previous sidebar conference. There has been a great amount of confusion over the interpretation to be given to Batson, despite our attempt in Ex parte Branch,526 So.2d 609 (Ala. 1987), to avert such confusion. We take this opportunity to clarify the Batson analysis.
Batson was intended to alleviate the harsh burden placed on criminal defendants by the decision in Swain v. Alabama,380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), and its requirement of showing "systematic exclusion." The Batson
analysis would allow the court to scrutinize the jury selection process where discrimination is shown in a single case. By contrast, Swain presented nearly an "insurmountable" burden to the defendant because it required proof of a pattern of discrimination involving several cases. See, Developments —Race And The Criminal Process, 101 Harv.L.Rev. 1472 (1988).
Batson requires the presence of three elements to establish a prima facie case of racial discrimination in the selection of a petit jury. The defendant must first prove that he is a member of a cognizable minority and that peremptory challenges were used to remove members of his race from the jury. Second, the defendant is entitled to rely on the fact that a peremptory challenge will allow a prosecutor to make discriminatory choices in jury selection if he chooses to do so. Finally, the *Page 266 
defendant must prove from these and any other relevant facts
that he may be aware of that an inference of discrimination may be drawn from the prosecutor's conduct. The first two legs of this analysis are easily understood; however, it is the third leg that has apparently caused much of the confusion over whether a prima facie case of discrimination has been proven in a given situation.
Scholarly comment has often expressed concern over the lack of clear standards for the Batson analysis. One commentator states:
 "Beyond the bare showing of cognizable group affiliation, the defendant's prima facie case consists of whatever evidence he can muster to convince the trial judge that the prosecutor has acted improperly, viewed in light of the inherently manipulable nature of peremptory challenges. Given the Court's nebulous description of the prima facie case, it is not surprising that there are almost as many concepts of sufficient proof of discrimination as there are reviewing courts.
 "The most troubling aspect of the prima facie inquiry arises when the only relevant circumstance is the number of minority jurors removed from the jury. In this type of case, the court may be forced to play an often confusing numbers game to decide whether a 'pattern' of discriminatory strikes exists. Decisions based upon numbers alone necessarily assume a somewhat arbitrary character and are a major reason for the often contradictory outcomes in lower court decisions.
 "Justice White indicated that a defendant could not establish a prima facie case merely by demonstrating that the prosecutor struck one or more blacks from the jury. Perhaps relying on this statement, a number of courts have refused to find a prima facie case when the prosecutor removed several blacks from the jury but could have removed an even greater number."
Note, Batson v. Kentucky And The Prosecutorial PeremptoryChallenge: Arbitrary and Capricious Equal Protection, 74 Va.L.Rev. 811, 821 (1988).
In Ex parte Branch, 526 So.2d 609 (Ala. 1987), this Court set out certain specific kinds of conduct by a prosecutor that would raise the inference of discrimination under Batson. InBranch, we stated:
 "The following are illustrative of the types of evidence that can be used to raise the inference of discrimination:
 "1. Evidence that the 'jurors in question share[d] only this one characteristic — their membership in the group — and that in all other respects they [were] as heterogeneous as the community as a whole.' [People v.] Wheeler, 22 Cal.[3d 258], 280, 583 P.2d [748], 764, 148 Cal. Rptr. [890], 905 (1978). For instance 'it may be significant that the persons challenged, although all black, include both men and women and are [of] a variety of ages, occupations, and social or economic conditions,' Wheeler, 22 Cal.3d at 280, 583 P.2d at 764, 148 Cal.Rptr. at 905, n. 27, indicating that race was the deciding factor.
 "2. A pattern of strikes against black jurors on the particular venire; e.g., 4 of 6 peremptory challenges were used to strike black jurors. Batson, 476 U.S. at 97, 106 S.Ct. at 1723.
 "3. The past conduct of the state's attorney in using peremptory challenges to strike all blacks from the jury venire. Swain, supra.
 "4. The type and manner of the state's attorney's questions and statements during voir dire, including nothing more than desultory voir dire. Batson, 476 U.S. at 97, 106 S.Ct. at 1723; Wheeler 22 Cal.3d at 281, 583 P.2d 764, 148 Cal. Rptr. at 905.
 "5. The type and manner of questions directed to the challenged juror, including a lack of questions, or a lack of meaningful questions. Slappy v. State, 503 So.2d 350, 355 (Fla. Dist. Ct. App. 1987); People v. Turner, 42 Cal.3d 711, 726 P.2d 102, 230 Cal.Rptr. 656 (1986); People v. Wheeler, 22 Cal.3d 258, 583 P.2d 748, 764, 148 Cal.Rptr. 890 (1978).
 "6. Disparate treatment of members of the jury venire with the same characteristics, or who answer a question in the same or similar manner; e.g., in Slappy, *Page 267 
a black elementary school teacher was struck as being potentially too liberal because of his job, but a white elementary school teacher was not challenged. Slappy, 503 So.2d at 352 and 355.
 "7. Disparate examination of members of the venire; e.g., in Slappy a question designed to provoke a certain response that is likely to disqualify a juror was asked to black jurors, but not to white jurors. Slappy, 503 So.2d at 355.
 "8. Circumstantial evidence of intent may be proven by disparate impact where all or most of the challenges were used to strike blacks from the jury. Batson, 476 U.S. at 93, 106 S.Ct. at 1721; Washington v. Davis, 426 U.S. [229], 242, 96 S.Ct. [2040], 2049, 48 L.Ed.2d 597 (1976).
 "9. The state used peremptory challenges to dismiss all or most black jurors. See Slappy, 503 So.2d at 354, Turner, supra."
Branch, 526 So.2d at 622-23.
Statistical evidence may also suffice to show an inference of discrimination, although statistics are not the sole possible method of proving intentional exclusion. United States v.David, 803 F.2d 1567, 1571 (11th Cir. 1986).
This list of prosecutorial wrongs is not exclusive. Other factors may also suffice to raise an inference of discrimination and complete the defendant's prima facie case. The trial judge has discretion in finding whether a prima facie case of purposeful discrimination has been proven. That finding is entitled to considerable deference on appeal. The trial judge must be sensitive, however, to the demands of equal protection of the laws. It has been stated that the removal of even one juror for a discriminatory reason is a violation of the equal protection rights of both the excluded juror and the minority defendant. United States v. David, 803 F.2d 1567 (11th Cir. 1986). Moreover, this is true even though blacks may be seated on the petit jury and there were valid race neutral reasons for striking other blacks from the jury. Id. at 1571. See United States v. Hughes, 864 F.2d 78, 79 (8th Cir. 1988);United States v. Horsley, 864 F.2d 1543, 1546 (11th Cir. 1989).
In this attempt to clarify what we consider to be the appropriate Batson inquiries, we find persuasive the reasoning of the Supreme Court of South Carolina in the case of State v.Jones, 293 S.C. 54, 358 S.E.2d 701 (1987). In that case, the defendant, as in the case at bar, was charged with a drug offense and objected to the empaneling of the trial jury onBatson grounds. The South Carolina Supreme Court, after enumerating the elements of the Batson analysis, noted that the trial judge had neither made a finding of a prima facie case on the record nor held a Batson hearing. The Jones court also noted that the finding of a prima facie case could not be ruled out as a matter of law after a review of the record. Id.293 S.C. at 56-58, 358 S.E.2d at 702-03.
Under Batson, much discretion is left to the trial court judge to determine whether the defendant has established a prima facie case. Batson, 476 U.S. at 97, 106 S.Ct. at 1723. This discretion left in the trial court necessarily contemplates a case-by-case analysis of the presence or absence of a prima facie case. The court in State v. Jones, supra, offered the following solution to this problem:
 "Rather than deciding on a case by case basis whether the defendant is entitled to a hearing based upon a prima facie showing of purposeful discrimination under the vague guidelines set forth by the United States Supreme Court, the better course to follow would be to hold a Batson hearing on the defendant's request whenever the defendant is a member of a cognizable racial group and the prosecutor exercises peremptory challenges to remove members of defendant's race from the venire. This bright line test would ensure consistency by removing any doubt about when a Batson hearing should be conducted. Further, this procedure would ensure a complete record for appellate review.
 "In all future jury trials, therefore, we recommend that the trial court hold a Batson hearing whenever 1) the defendant requests such a hearing; 2) the defendant is a member of a cognizable *Page 268 
racial group; and 3) the prosecutor exercises peremptory challenges to remove members of defendant's race from the venire."
293 S.C. at 57-58, 358 S.E.2d at 703.
Adopting this analysis, we hold that an otherwise qualifying defendant is entitled to a Batson inquiry when he makes his objection to the empanelment of the jury after it is selected but before it is sworn. At that point, the trial judge must conduct a Batson inquiry on the record but out of the hearing of the jury. The defendant must then prove a prima facie case of discrimination under Batson. If the trial court determines that a prima facie case exists, the prosecution must then come forward with a race-neutral explanation as to why peremptory challenges were used to exclude members of a minority.[1] Where the prosecution fails to offer a reasonable explanation for its strikes, jury selection must begin anew. State v. Jones,293 S.C. 54, 358 S.E.2d 701 (1987).
In the present case, we agree with the Court of Criminal Appeals that this cause must be remanded to the trial court with directions that the trial court hold a hearing to determine whether the tenets of Batson and Branch, as modified herein, have been followed. The defendant may not prove his prima facie case solely from the fact that the prosecutor struck one or more blacks from his jury. United States v. Lane,866 F.2d 103, 106 (4th Cir. 1989). The defendant must offer some evidence in addition to the striking of blacks that would raise the inference of discrimination. In determining whether the evidence is sufficient to create an inference of discrimination, the court should look to the factors listed inBranch, supra, for guidance. However, that list is not an exclusive rendition of the facts that may create the inference. The trial court must use its discretion in weighing this kind of fact question, but this discretion must be tempered by a concern for the defendant's right to equal protection of the laws.
Trial courts should not require a strict or rigid quantum of proof by the defendant of the Batson elements. Rather, out of a concern for equal protection and justice under the law, trial courts must be sensitive to the defendant's Batson claims, and should not lightly brush them aside. Batson demands that, in deciding whether the defendant has carried his burden of proving a prima facie case, the trial court "must undertake 'a sensitive inquiry into such circumstantial and direct evidence of intent as may be available.' " Batson, 476 U.S. at 93,106 S.Ct. at 1721. Only after such an inquiry on the record may aBatson objection be properly overruled. Only under these circumstances is the trial court's ruling entitled to the standard of deference governing review of the trial court's discretion.
The judgment of the Court of Criminal Appeals is affirmed.
AFFIRMED.
JONES, SHORES, HOUSTON and KENNEDY, JJ. concur.
[1] There are many possible reasonable explanations for such strikes. Batson demands that such strikes be related to the case to be tried and not be related to the defendant's and the jurors' shared race. Batson, 476 U.S. 79, 97-98,106 S.Ct. 1712, 1723-1724, 90 L.Ed.2d 69 (1986). In a given case, the following factors may be relevant and may suffice to defeat the defendant's prima facie case:
1. Age, fringe religious beliefs, body english, handwriting, and name association in certain instances. Tolbert v. State,315 Md. 13, 553 A.2d 228 (1989); Chambers v. State,724 S.W.2d 440 (Tex.Ct.App. 1987).
2. Demeanor of the juror. United States v. Forbes,816 F.2d 1006, 1010 (5th Cir. 1987).
3. Fact that prospective juror, like defendant, may be young, single, and unemployed; fact that prospective juror was struck because divorced and of low income occupation, in favor of a professional, married person; avoidance of eye contact with prosecutor. United States v. Cartlidge, 808 F.2d 1064, 1070-71
(5th Cir. 1987).
From a consideration of these factors it is clear that the explanation need not rise to the level of a challenge for cause. Batson, 476 U.S. at 97, 106 S.Ct. at 1723. However, a clear, reasonable explanation for the strike must be given. Exparte Branch, 526 So.2d 609, 623-24 (Ala. 1987). *Page 269