ON RETURN TO REMAND
The appellant, John Forrest Parker, was convicted of the capital offense of murder for pecuniary gain, as defined in Ala. Code 1975, § 13A-5-40(a)(7), and sentenced to death. Parkerv. State, 587 So.2d 1072 (Ala.Cr.App. 1991). On original submission, we remanded this cause with directions that the trial court (1) conduct an evidentiary hearing in accordance with Ex parte Bankhead, 585 So.2d 112 (Ala. 1991), and require the prosecutor to state his reasons for striking black veniremembers, Parker, 587 So.2d at 1077, and (2) correct certain errors and omissions in the imposition of sentence, id.
at 1100.
 I.
After conducting an evidentiary hearing on the matter, the trial judge, with commendable thoroughness and a conscientiousness warranted by the sentence imposed in this case, entered a written order in which she made specific findings of fact and concluded that the principles ofBatson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69
(1986), were not violated by the prosecution's use of its peremptory strikes to remove eight black venire members. That order is attached to this opinion as Appendix I.
The findings and conclusions contained in that order are fully supported by our own independent review of the record and are approved by this Court. We find that no violation of the principles of Batson v. Kentucky, supra, or Ex parte Branch,526 So.2d 609 (Ala. 1987), occurred in this case. See Ex parteBird and Warner, 594 So.2d 676 (Ala. 1991).
 II.
In remanding this cause on original submission, this Court explicitly instructed the trial court to "1) make new findings regarding the aggravating and mitigating circumstances, 2) weigh those aggravating and mitigating circumstances and determine whether the aggravating circumstances outweigh the mitigating circumstances, and 3) enter a proper sentencing order as required by Ala. Code 1975, § 13A-5-47(d)." Parker,587 So.2d at 1100. In response, the trial judge entered an "AMENDED ORDER OF COURT ON IMPOSITION OF SENTENCE." That order is attached to this opinion as Appendix II.
In that amended sentencing order, the trial judge, as required by § 13A-5-47(d), entered specific written findings concerning the existence or nonexistence of each of the eight statutory aggravating circumstances set forth in § 13A-5-49, and the existence or nonexistence of each of the seven statutory mitigating circumstances set forth in § 13A-5-51. The trial judge found the existence of one aggravating circumstance: that the capital offense was committed for pecuniary gain. § 13A-5-49(6). The trial judge found the existence of two statutory mitigating circumstances: that the appellant has no significant history of prior criminal activity, § 13A-5-51(1); and that the appellant was 19 years old at the time of the commission of the crime, § 13A-5-51(7). The trial judge found the existence of two nonstatutory mitigating circumstances: the jury's recommendation of life without parole and the appellant's remorse. The trial judge then concluded that the aggravating circumstance outweigh the mitigating circumstances.
 III.
The appellant contends that there is no evidence to support the trial court's finding that the Appellant and Smith held Mrs. Sennett "down with a small blue chair and stabbing her while she was asking them not to hurt her." R. 25 and 28. The finding is directly supported by the appellant's statement to Investigator May. See R. 1419.
 IV.
The amended order of the trial court is proper, is supported by the record, and *Page 1173 
fully complies with the requirements of § 13A-5-47(d). Therefore, this Court now reviews the propriety of the sentence of death imposed by the trial court.
This Court has searched the record and found no error which "has or probably has adversely affected the substantial right of the appellant." Rule 45A, A.R.App.P.; accord, § 13A-5-53(a). There is no evidence that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor. § 13A-5-53(b)(1). This Court's independent weighing of the aggravating and mitigating circumstances indicates that death was the proper sentence. § 13A-5-53(b)(2). The sentence of death in this case is neither excessive nor disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. § 13A-5-53(b)(3).
Therefore, the appellant's conviction for capital murder and his sentence to death are affirmed.
OPINION EXTENDED;
AFFIRMED.
All Judges concur.
APPENDIX I
State of Alabama Colbert County
 In the Circuit Court of Colbert County, Alabama
John Forrest Parker, Appellant
vs.
State of Alabama
Case Nos. CR 89-838, CC 88-105.
Dec. 3, 1991.
 ORDER
This cause was heretofore remanded by the Court of Criminal Appeals, State of Alabama, for an evidentiary hearing at which the prosecution was ORDERED to give reasons for its use of peremptory challenges against black venire members and if not able to articulate specific race-neutral explanations that are related to this particular case a new trial be granted the appellant. This Court notes that the defendant has never established a prima facie case of discrimination and this is not a case where the prosecutor has volunteered his reasons prior to the trial court's determination on the defendant's establishment of a prima facie case of discrimination. The present hearing is required pursuant to Ex parte Bankhead,585 So.2d 112 (Ala. 1991). A hearing was set for November 12, 1991 at 2:30 p.m. The State's attorneys, Gary Alverson and Ronald Hudson, were present and defendant, John Forrest Parker, was present in person and represented by his attorneys, Thomas Heflin and Gene Hamby. An additional hearing was held on motion of defendant on November 18, 1991, at 2:10 p.m. The same parties were present. The Court having proceeded to consider the testimony given by the District Attorney, Gary Alverson, on behalf of the State, as well as having considered all of the testimony and evidence presented on behalf of the defendant, and the court noting for the record that 59 jurors from the original jury venire were present, having responded to subpoenas issued by the defendant, and the Court further having considered the original jury venire list which was stipulated to by the parties and which is already a part of the record on appeal, beginning with No. 3, S.A. and ending with No. 129, M.W., which list also reflects the strikes made by the State and the strikes made by the defendant, and the Court having considered all of the testimony and evidence presented in open Court, and based upon said evidence and testimony, the Court does find that the venire consisted of 79 prospective jurors, 10 of which were excused, leaving the number at 69. There were 9 black jurors on said venire, and 60 white jurors. The 9 black venire members comprised 13% of the venire. The blacks comprised 8% of the trial jury.
The Court further finds that the State presented evidence which indicated that venire member No. 3, a black female named S.A., was stricken by the State because she was the daughter of E.A., who was being prosecuted by the District Attorney at that *Page 1174 
time for the offense of Theft of Property in the First Degree.
The Court further finds that venire member No. 21, a black female, was stricken by the State because she knew the victim's husband's girlfriend, D.T. The victim's husband had procured this defendant and his co-defendants to kill his wife, and D.T. was a prospective witness for the defendant at the time of selection of the jury. The District Attorney also testified that she was stricken because she was related to one R.C. who had been prosecuted for violation of the Alabama Uniform Controlled Substance Act and because of her statement that she was generally opposed to the death penalty. The State further presented evidence that B.R., white veniremember No. 92, was struck for the same general reasons by the State. The State further presented evidence that said veniremember T.C. indicated during voir dire that she had some knowledge and training in psychology. The District Attorney testified that he struck all veniremembers who had training in the field of psychology because they might place undue emphasis on defense witness Dr. Crowder's testimony. The District Attorney testified that white veniremember No. 129, M.W., white veniremember No. 92, B.R., white veniremember No. 63, R.L., white veniremember No. 58, S.L., white veniremember No. 9, R.B., and white veniremember No. 82, M.N., were all stricken for that same reason, inasmuch as they responded during voir dire that they had some knowledge and training in the field of psychology.
With respect to veniremember No. 25, a black male by the name of J.D., the State indicated that the reason they struck said veniremember was because he indicated during voir dire that he had has [sic] difficulty staying overnight, and white veniremember 53, J.J., and white veniremember No. 40, P.H., were stricken for the same reason by the State. The State further presented evidence that J.D. had stated during voir dire: "I really don't want to be here" and that that was an additional reason the State struck veniremember No. 25, J.D.
The State presented evidence that they had stricken veniremember No. 67, a black female by the name of W.M., because she indicated during voir dire that she has worked with members of the family of Billy Gray Williams, the black co-defendant to the defendant of this case, whose case had been tried at the time; that she had heard discussions regarding this case, and white veniremember No. 68, B.M., was stricken for the same reason inasmuch as she stated during voir dire that she knew the family of the defendant, John Forrest Parker, in this case, the co-defendant of Billy Gray Williams.
With respect to veniremember No. 77, black female C.M., the State presented evidence that they had stricken her because the District Attorney had information that she was a cousin to R.M. and J.M., who had been prosecuted by the District Attorney on drug charges and further on the ground that drug use and violations were factually related to this case. The State further offered as an excuse for striking veniremember C.M. she had a child born out of wedlock and that the defendant in this case likewise had a child born out of wedlock, and the State indicated that they felt like veniremember C.M. would be sympathetic toward the defendant and his case for this reason.
With respect to veniremember No. 83, a black female, A.O., the State presented evidence that they struck veniremember A.O. because she was married to T.O., who is the brother of W.E.O., who at the time of the trial of this cause had a pending criminal case against him for sale of cocaine. Further, this veniremember's husband, T.O., was a defendant in a civil forfeiture case arising out of the same sale of cocaine case against W.E.O., at the time this case was tried, and, further, veniremember A.O. stated during voir dire that she knew the attorney for the defendant, Gene Hamby, through her work with the City of Sheffield.
With respect to veniremember No. 20, black male, E.L.W. the State offered as *Page 1175 
evidence of the reason for their striking veniremember E.L.W. that he had a series of traffic offenses in recent years, indicating a disregard for the law, and State offered testimony that they also struck veniremember No. 129, M.W. with a similar type record for the same reason.
With respect to veniremember No. 121, black female by the name of M.A.W., the State indicated that they struck veniremember M.A.W. because she had indicated during voir dire that she had training in the area of psychology. The State struck white veniremember No. 129, M.W., white veniremember No. 92, B.R., white veniremember No. 63, R.L., white veniremember No. 58, S.L., white veniremember No. 9, R.B., and white veniremember No. 82, M.N. for the same reason, in addition to black veniremember No. 21, T.C., who was struck for this reason, among others, by the State.
Black veniremember No. 113, C.T., served on the trial jury in this case.
On cross-examination the District Attorney, Gary Alverson, testified that his information regarding traffic tickets was obtained from local police department and the Colbert County Circuit Clerk's records; that the State was particularly concerned about jurors with more than one traffic ticket. The District Attorney testified that information on veniremembers' relatives regarding felony cases, pending or disposed of, was obtained from the circuit court files in the Circuit Clerk's office in Colbert County.
No evidence was presented during the hearing which contradicted the State's evidence that veniremember T.C. was related to R.C., who had been prosecuted by the District Attorney on a drug case; that veniremember C.M. was related to R.M. and J.M., who were prosecuted by the District Attorney on drug charges; that veniremember A.O. was related to T.O., who was a defendant in a forfeiture case where the State was the plaintiff at the time of the trial, and that she was related to W.E.O., who was a defendant in a sale of cocaine case brought by the State at the time of this trial. Further, the State's testimony with respect to pending charges and convictions of relatives of these veniremembers was uncontradicted.
The District Attorney testified that he did not ask members of the jury venire whether or not anyone had children born out of wedlock because he felt it would embarrass the veniremembers to whom they would apply. The District Attorney obtained this information through other sources, namely through local law enforcement officers and his investigator's efforts in Colbert County, Alabama.
The Court further finds that Juror No. 88, M.Q., testified that he had a first cousin who had been convicted of a felony (breaking into some houses) but that he thought it was in Franklin County. Said juror also testified that he did not have more than one regular traffic ticket but had traffic tickets when he was part of the railroad crew which was discharged for violating the speeding regulations for trains.
Veniremember No. 46, L.H., testified that she had a family member, namely an uncle by marriage, who had been convicted of a felony in Colbert County.
Juror No. 8, J.R.A., testified that he had a relative who had been convicted of a felony, namely, making whiskey, fifteen years ago.
Juror No. 78, N.G.M., testified that he had a brother who had been convicted of a felony twenty years ago in Lawrence County, Alabama (as an accessory to a robbery).
Juror No. 85, W.G.P., testified that he had had more than one traffic conviction; however, only one was in Colbert County, and it was seven to eight years ago.
Juror No. 11, J.S., testified that she had more than one traffic ticket, namely, two old ones, one from Florence, Lauderdale County, Alabama, and one from Muscle Shoals, Colbert County, Alabama, another one in 1987 in Lauderdale County, and one in Sheffield, Alabama, in 1988.
Juror No. 64, L.L., testified that she had a relative in Florida, an uncle on her mother's side, who was convicted of a felony 1215 years ago; said juror thought it was a *Page 1176 
manslaughter case, and the conviction was in the State of Florida.
Juror No. 41, G.H., foreman of the trial jury, testified that he had a first cousin who had been convicted of what he thought was a felony in Madison County, Alabama. Said juror further testified that during the past ten years he has had two speeding tickets, one in Colbert County and one in Lauderdale County.
Juror No. 66, T.R.M., testified that he had had a couple of traffic tickets, one in Leighton, Colbert County, Alabama, and one in Lauderdale County, from Rogers-ville in 1982.
Based on the testimony presented by the District Attorney, the Court finds that it was the practice of the District Attorney to check municipal police departments, the district court and the circuit court in Colbert County, Alabama, for traffic violations and further finds that the practice of the District Attorney's office was to strike jurors who had a series of traffic violations within the recent past, and further finds that said practice was not rebutted by the testimony of the jurors called on behalf of the defendant, the Court finding that none of those jurors had more than one traffic ticket from Colbert County, either municipal, district or circuit court, in the recent past, and although some had more than one traffic ticket, said convictions were in other circuits. The information concerning out-of-Circuit or out-of-State convictions was not shown to be known to the District Attorney at the time of striking of the jury. The Court further finds that of the jurors who testified on behalf of the defendant one would have been stricken by the State pursuant to the State's practice, namely veniremember No. 46, L.H., and the District Attorney agreed that he overlooked her relationship by marriage to a person who had been convicted of a felony in Colbert County, Alabama. The Court further finds from the evidence that if the State had sought additional verification of its traffic information on veniremembers through the computer record from the State Department of Public Safety, the State would only have been able to get jurors' traffic records for the last five years. The District Attorney further testified that with respect to his practice that he intended to strike all jurors who had training in the field of psychology, that he overlooked the information obtained during the lengthy voir dire with respect to juror No. 11, J.S. The District Attorney testified that that was his mistake. The Court does not find that there was a significant disparate treatment of members of the jury venire with the same characteristics, or who answered a question in the same manner.
The Court finds that there was no proof that there was a pattern of strikes against black jurors on this particular venire. The State had 28 strikes available and struck 8 black veniremembers and 20 white veniremembers, thus using 29% of its strikes to strike black veniremembers.
The Court does not find that there was any specific evidence of any past conduct of the State's attorney in using peremptory challenges to strike all blacks from the jury venire. Although the defendant asked the Court to take judicial notice of the jury lists in several cases, the majority of which were not tried before the undersigned judge, the undersigned judge has no knowledge from the evidence presented at this hearing why the particular jurors were chosen in these other cases, and does not find that mere juror lists is proof of intentional past discriminatory practice on the part of the District Attorney. In two of the cases submitted by defendant, the State struck fewer black veniremembers than the defense, (CC-87-137 and -138).
The Court further finds that the State's attorney's questions and statements during voir dire were very detailed, and much more than a desultory voir dire.
The Court does not find from the evidence that the State's questions directed to the challenged veniremembers, both in the sense of the questions that were asked, and in the sense of the questions that were not asked were calculated to enable the State to strike the black veniremembers.
The Court does not find that there was a significant disparate treatment of members *Page 1177 
of the jury venire with the same characteristics, or who answered a question in the same or similar manner.
The Court does not find that the voir dire examination of members of the venire on behalf of the State was designed to provoke certain responses which were likely to disqualify black veniremembers but not white veniremembers. The Court does not find that there was any circumstantial evidence of intent on the part of the District Attorney to strike the jurors for other reasons than race-neutral reasons.
Although the State did strike all but one black veniremember on the venire, the court finds from the evidence that the percentage of black jurors on the venire was 13% and the percentage of black jurors on the trial jury was 8%.
With respect to the testimony of David Thompson, former investigator for the District Attorney, this Court finds that said David Thompson was not the investigator for the District Attorney at the time of the jury selection in this case. To the contrary, he had been gone from his employment with the District's Attorney's office for nearly two years (from August 1987 until May 1989). This Court further finds that said investigator did little, if any, jury investigation for the District Attorney's office. Based on the testimony of Assistant District Attorney Ronald Hudson, this Court simply finds that said witness' testimony was not believable. This Court further finds that the District Attorney's office had in fact explained the Batson decision to said David Thompson while he was one of the investigators for the District Attorney's office. This Court further finds that this District Attorney's office was the first in the State to apply Batson to the defense at the trial level.
Based on all of the evidence presented in open Court, this court finds that the prosecution's strikes were race-neutral, this court specifically finding no pattern of strikes against black jurors on this particular venire, no proof of any intentional past conduct of the State's attorney in using peremptory challenges to strike all blacks from the jury venire, no proof that the voir dire was a desultory voir dire; and no disparate treatments of members of the venire who gave similar answers or with respect to whom the State had similar information.
This Court finds that the defendant in this case had a public trial by an impartial jury as guaranteed by Amendment VI of the Constitution of the United States of America.
See also, Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712,90 L.Ed.[2d] 69 (1986); Powers v. Ohio [___ U.S. ___],111 S.Ct. 1364 [113 L.Ed.2d 411] (1990); Ex parte Branch, 526 So.2d 609
(Ala. 1987); Harrell v. State, 555 So.2d 263, 268 (Ala. 1989);Stephens v. State, 580 So.2d 11 (Ala.Civ.App. 1990), affirmed, 580 So.2d 26 (Ala.), cert. denied ___ U.S. ___,112 S.Ct. 176 [116 L.Ed.2d 138] (1991); Bryant v. State,516 So.2d 938 (Ala.Cr.App. 1987); Ex parte Bird and Warner,594 So.2d 676 (1991); and Jackson v. State [594 So.2d 1289] (Ala.Cr.App. 1991).
Done and ORDERED this the 3rd day of December, 1991.
 /s/ Inge P. Johnson ______________________ Presiding Circuit Judge
APPENDIX II
 In the Circuit Court of Colbert County, Alabama
State of Alabama Colbert County
State of Alabama Plaintiff
vs.
JOHN FORREST PARKER Defendant
Case No. CC 88-105
Dec. 3, 1991
 AMENDED ORDER OF COURT ON IMPOSITION OF SENTENCE
The defendant in this case, John Forrest Parker, was charged by indictment of the Grand Jury of the Circuit Court of the 31st Judicial Circuit of Alabama in and for Colbert County, Alabama, with the capital offense of Murder done for a pecuniary or other valuable consideration. This charge is brought pursuant to the provisions of the *Page 1178 
Code of Alabama, 1975, as amended, Section 13A-5-40(a)(7).
This case came on to be heard before the Court and the jury of twelve men and women duly empaneled and sworn as required by law. The jury after hearing the evidence and the Court's oral charge as to the applicable law, including the lesser included offenses of Conspiracy to Commit Murder, Assault in the First Degree, Assault in the Second Degree, and Manslaughter, retired to deliberate and upon the consideration of the law and evidence found the defendant guilty of capital murder as charged in the indictment. The verdict was unanimous in finding the defendant guilty of the capital offense as charged in the indictment and not of any of the lesser included offenses. The Court announced the jury's verdict on June 6, 1989, and on June 7, 1989, commenced a sentence hearing before the same jury pursuant to Section 13A-5-45 of the Code of Alabama of 1975, as amended. After hearing the evidence during the punishment phase and hearing, the jury was again charged as to the applicable law, advising said jury that if mitigating circumstances outweighed the aggravating circumstances then the punishment would be life imprisonment without eligibility for parole, but if the aggravating circumstances outweighed the mitigating circumstances, the verdict would be death. After due deliberation, the jury returned a verdict affixing the defendant's punishment at life imprisonment without parole, the verdict being two (2) for death and ten (10) voting for life imprisonment without parole. The makeup of the jury was as follows: Nine (9) white men, one (1) black man, and two (2) white women. The Court then announced the jury's verdict and set the 21st day of June, 1989, at 2:30 p.m. for further hearing as mandated by Section 13A-5-47 of the Code of Alabama of 1975, as amended. At said hearing, the defendant, his trial counselors and the district attorney and chief deputy district attorney were present and ready to proceed.
 FINDINGS OF FACTS
The Court finds from the evidence introduced at trial that the defendant, John Forrest Parker, and his friend, Kenneth Eugene Smith, on the morning of March 18, 1988, went to the home of Elizabeth Dorlene Sennett in rural Colbert County, Alabama, with the intent to kill said Elizabeth Dorlene Sennett. The Court further finds from said evidence that the day before, Billy Gray Williams had paid the defendant the sum of One Hundred and No/100 ($100.00) Dollars to use for purchasing a weapon to be used in said murder, but that the defendant used that money for drugs to "shoot up." The Court further finds that the defendant was promised One Thousand and no/100 ($1,000.00) Dollars for the killing by Billy Gray Williams, and that he would be paid the balance when the job was done. The Court further finds that Kenneth Eugene Smith and the defendant, John Forrest Parker, drove to the residence of Elizabeth Dorlene Sennett in the defendant's vehicle. The Court further finds that the defendant shot up 3 cc's of Talwin on the way to said residence. The Court further finds that the defendant had been unsuccessful in securing a gun for "the job" and that he brought with him a survival knife. The Court further finds that the defendant drove his vehicle to Elizabeth Sennett's home and that Kenneth Eugene Smith sharpened the defendant's knife all the way down there. The Court further finds that they parked the defendant's car in the rear of the Sennett home. The court further finds that the defendant and Mr. Smith asked Elizabeth Dorlene Sennett for permission to use the bathroom, which she gave them. While in the bathroom, the defendant put cotton socks on his hands. The Court further finds that when he came out of the bathroom, the defendant jumped Elizabeth Dorlene Sennett and started hitting her and together he and Kenneth Eugene Smith killed her by hitting her with a galvanized pipe, holding her down with a small blue chair and stabbing her while she was asking them not to hurt her. The Court further finds that the defendant and Kenneth Eugene Smith took a VCR and a stereo to make it look like a burglary, *Page 1179 
which was in accordance with their plan, and that they also broke the glass in the medicine cabinet to further this plan. The Court further finds from the evidence that the defendant and Kenneth Eugene Smith threw away the survival knife they had used for the killing, and that the defendant threw the stereo off a bridge and burned his clothes after the killing. The Court further finds that the defendant was paid the additional Nine Hundred and no/100 ($900.00) Dollars after the killing.
The Court considers the aggravating circumstances as set out and enumerated in Section 13A-5-49 of the Code of Alabama, as amended.
A. The Court finds from the evidence introduced at the trial and reintroduced at the punishment hearing before the jury that the defendant, John Forrest Parker, committed this murder for pecuniary gain, namely, for the sum of One Thousand and no/100 ($1,000.00) Dollars. The Court finds that said defendant was in fact paid that sum for said intentional killing. The Court finds that this is an aggravating circumstance pursuant to Section 13A-5-49(6) of the Code of Alabama as amended, and the Court has considered said aggravating circumstance.
The Court finds that the defendant was not a person under sentence of imprisonment; therefore the Court does not consider the aggravating circumstance listed in § 13A-5-49(1), Code of Alabama, the Court finding that said aggravating circumstance does not exist in this case.
The Court finds that the defendant was not previously convicted of another capital offense, nor previously convicted of a felony involving the use or threat of violence to the person; therefore, the Court does not consider the aggravating circumstance listed in § 13A-5-49(2), Code of Alabama, the Court finding that said aggravating circumstance does not exist.
The Court finds that the defendant did not knowingly create a great risk of death to many persons; therefore, the Court does not consider the aggravating circumstance listed in §13A-5-49(3), Code of Alabama, the Court finding that said aggravating circumstance does not exist.
The Court finds that this offense was not committed while the defendant was engaged or was an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit rape, robbery, burglary or kidnapping; therefore, the Court does not consider the aggravating circumstance listed in § 13A-5-49(4), Code of Alabama, the Court finding that said aggravating circumstance does not exist.
The Court does not find that the offense was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody; therefore, the Court does not consider the aggravating circumstance listed in § 13A-5-49(5), Code of Alabama, the Court finding that said aggravating circumstance does not exist.
The Court does not find that the offense was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws; therefore, the Court does not consider the aggravating circumstances listed in §13A-5-49(7), Code of Alabama, the Court finding that said aggravating circumstance does not exist.
The Court does not find that the offense was especially heinous, atrocious or cruel compared to other capital offenses; therefore, the Court does not consider the aggravating circumstance listed in § 13A-5-49(8), Code of Alabama, the Court finding that said aggravating circumstance does not exist.
B. The Court now proceeds to consider the mitigating circumstances as set out and enumerated in Section 13A-5-51, the Code of Alabama, as amended, and other mitigating circumstances proved at the punishment hearing before the jury.
No additional evidence was presented either by the State or by the defense at the sentence hearing before this Court. Both the State and the defense counsel presented arguments.
1. The Court finds from the evidence that the defendant has no significant history *Page 1180 
of prior criminal activity; accordingly, the Court does consider this mitigating circumstance, as listed in §13A-5-51(1), Code of Alabama.
2. The Court finds that the capital offense was not committed while the defendant was under the influence of extreme mental or emotional disturbance; accordingly, the Court does not consider the mitigating circumstances listed in § 13A-5-51(2), Code of Alabama, the Court finding that said mitigating circumstances does not exist in this case.
3. The Court finds from the evidence that the victim was not a participant in the defendant's conduct or consented to it; therefore, the Court finds that the mitigating circumstance listed in § 13A-5-51(3) Code of Alabama, does not exist, and the Court does not consider it.
4. The Court does not find from the evidence that the defendant was an accomplice in a capital offense committed by another person and that his participation was relatively minor. The Court finds from the evidence in this case that defendant and Kenneth Eugene Smith both killed the victim by hitting her with a galvanized pipe, holding her down with a small blue chair and stabbing her while she was asking them not to hurt her. Therefore, the Court finds that the mitigating circumstance listed in § 13A-5-51(4), Code of Alabama, does not exist, and the Court does not consider it.
5. The Court does not find from the evidence that the defendant acted under extreme duress or under the substantial domination of another person; therefore, the Court finds that the mitigating circumstance listed in § 13A-5-51(5), Code of Alabama, does not exist, and the Court does not consider it.
6. The Court does not find from the evidence that the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired; Although evidence was produced by defendant at the sentencing hearing before the jury by Dr. James Crowder, clinical psychologist, that Talwin would have impaired the defendant's judgment, the Court also had evidence before it regarding the defendant's actual actions during and after the murder of Mrs. Sennett which demonstrate that his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was not substantially impaired. The defendant's action in placing cotton socks over his hands prior to the killing, his action in throwing away the murder weapon after the killing, his attempting to make it look like a burglary which had "gone bad," his throwing away the stereo and burning of his clothes is all evidence that the defendant at the time in question appreciated that his conduct was criminal, and that he might be apprehended, and for that reason did what he could to avoid apprehension. Accordingly, the Court finds that the mitigating circumstance listed in § 13A-5-51(6), Code of Alabama, does not exist, and the Court does not consider it.
7. The Court does find that the defendant was 19 years old at the time of the commission of the crime, and therefore finds that the mitigating circumstance listed in § 13A-5-51(7), Code of Alabama does exist, and the Court does consider it.
8. The Court does find that the jury's recommendation is a mitigating factor, and the Court has considered said mitigating factor at this sentence hearing. However, the Jury was allowed to hear an emotional appeal from the defendant's mother. Although the defendant's mother attempted to blame the defendant's drug addiction on the medication the defendant had taken as a child for his condition diagnosed as "hyperactivity," there was no proof that such was the case. Dr. James Crowder testified that a child taking ritalin as prescribed for treatment for hyperactivity would have no withdrawal symptoms from said drug when such drug was discontinued. The Court does not find that the defendant's problems during his childhood is a mitigating factor. He was appropriately treated for said condition according to the testimony of Dr. Crowder. *Page 1181 
Furthermore, evidence was presented to the jury that the husband of the victim was the instigator of the killing of his wife, but the fact that the victim's husband conspired with the defendant and his co-defendants to kill his wife does not make this defendant any less culpable, and is not a mitigating factor.
9. The Court does find that the defendant's remorse is a mitigating factor.
The Defendant was asked if had anything to say before sentence was imposed on him and he said "No."
The Court having considered the aggravating circumstance as it was proven, that the murder was done for pecuniary gain and the following mitigating circumstances, namely: the defendant's age, the fact that defendant has no significant history of prior criminal activity, his remorse and the jury recommended sentence of life without parole and the Court weighing these, the Court finds that the aggravating circumstance outweighs the mitigating circumstances outlined above. Killing a human being, intentionally and deliberately, for money, evidences a total and complete disregard for the value and uniqueness of human life. The receipt of money by the defendant both prior to the murder and after completing the murder evidences that this total, deliberate and intentional disregard for the value of human life was of a continuous nature, and not a mere impulse. Accordingly the Court finds that there is a reasonable basis for enhancing the jury's recommendation of sentence.
Therefore, on this the 21st day of June, 1989, with the defendant, John Forrest Parker, being present, and having been convicted by a jury of capital murder and the Court having weighed the aggravating circumstance against the mitigating circumstances and factors and the Court having found that the aggravating circumstance outweighs the mitigating circumstances and factors;
It is therefore, ORDERED, ADJUDGED and DECREED by the Court, and it is the judgment of this Court and its sentence of law that the defendant, John Forrest Parker, suffer death by electrocution. The Sheriff of Colbert County, Alabama, is directed to deliver John Forrest Parker to the custody of the Director of the Department of Corrections and the designated executioner shall, at the proper place for the execution of one sentenced to suffer death by electrocution, cause a current of electricity of sufficient intensity to cause death in the application and continuance of such current to pass through the said John Forrest Parker until said John Forrest Parker is dead.
Mr. Parker, may God have mercy on you.
Done this the 3rd day of December, 1991.
 /s/ Inge P. Johnson _______________________ Presiding Circuit Judge
cc: Gary Alverson
Ron Hudson
Thomas Heflin
Gene Hamby
Sheriff of Colbert County