WISE, Presiding Judge.
The appellant, Quante Dequan Rice, was convicted of the capital offense of robbery-murder, a violation of § 13A-5-40(a)(2), Ala.Code 1975. After a sentencing hearing, by a vote of 8^f, the jury recommended that he be sentenced to imprisonment for life without the possibility of parole. The trial court followed the jury’s recommendation and sentenced him to imprisonment for life without the possibility of parole. Rice filed a motion for a new trial, which was denied by operation of law. See Rule 24.4, Ala. R.Crim. P. This appeal followed.
Rice argues that the trial court improperly denied his motion pursuant to Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), after the prosecution allegedly used its peremptory challenges in a racially discriminatory manner. In his brief to this court, he specifically contends, as he did at trial, that the prosecution’s reason for striking Veniremember T.L.S. was pretextual.
After the jury was struck but before it was sworn, the following occurred:
“[DEFENSE COUNSEL]: At the conclusion of the strikes, the defense would make a motion for a Batson challenge; the information being that we started with a panel of 36. The percentage of white members of the venire, of the panel was 26 percent, six white males and seven white females. The black percentage was 64 percent, eleven black males and twelve black females. Of the twelve strikes for the State, there were — eleven of the twelve strikes were against black members of the panel, five black males and six black females. There were eleven black males to start with and twelve black females to start with. The pattern indicates an over *146 whelming majority; eleven out of those twelve strikes were against minority members, especially African-American, on the panel. Percentage matches, the dilution is that 64 percent to begin with to 58 percent after striking. So it meets the numerical basis. The Defendant is an African-American defendant. Obviously he’s black male. The dilution of the black males — they struck five out of the eleven black males off the panel. So I think we have met the initial basis to go forward and ask the State to follow up with neutral reasons for their strikes.
“THE COURT: All right. The State?
“[PROSECUTOR]: Well, Judge, the State would answer that you know the prima facie is not made. If you were to look at the venire, the makeup of the panel is eight to six African-American. The defense struck all but three of the white females. So there were significantly less white jurors impaneled for us to strike from as the whites were being struck. And it’s not disproportionate to the amount of African-Americans on the jury pool. And it is not skewed heavily towards African-American in the total makeup of the jury pool.
“THE COURT: How many Caucasian strikes did the defense take?
“[DEFENSE COUNSEL]: Seven of the twelve, seven white and five blacks as opposed to eleven and one.
“THE COURT: All right. The Court is going to require that the State go through its eleven strikes and give race-neutral reasons, if any, why the strikes were made.
“[DEFENSE COUNSEL]: For the record it would be twelve strikes. Each side had twelve.
“THE COURT: I understand, but you said that they struck eleven whites.
“[DEFENSE COUNSEL]: Yes, sir, I understand. I misspoke.
“[PROSECUTOR]: Judge, the first strike was number 50, [D.F.], who as you recall during jury selection [indicated] that he neither wanted to be there nor could he sit in judgment because he wasn’t going to render a verdict of guilt. And we brought him back here, and he didn’t want to be here. And he didn’t want to vote guilty. 193 — I’m sorry. 26 also was brought. Number 26 was struck because her son was accused of robbery. Number 119 was struck because her nephew has been accused of robbery in Dallas County. Number 86 as well was brought back here because he did not want to be here and said that he could not judge. And when I asked him, he said that he would not vote guilty. Number 71, which was [R.H.], was brought back here. And when he asked, he said that no matter what the evidence shows, he would not vote guilty because he did not want to be here.
“[DEFENSE COUNSEL]: Number 71?
“[PROSECUTOR]: Yes, [R.H.] It was in the large' jury pool. If you were to check, I asked everyone in that panel if — no, it was not back there in the room. It was out in the large jury pool. And [R.H.] was seated in the third row back and stood up and said that he just could not sit in judgment. And I asked him twice if I was able to prove my case beyond a reasonable doubt, could he vote guilty. And he said he did not think so. Juror number 164 is [T.L.S.] I called her name at the beginning. And she has been convicted of a disorderly conduct and harassment which shows a disregard for the law. Number 59 was a white male. Number 125, [E.M.], she stated in group voir dire that her car had been stolen, and no one had ever been caught. And she was not happy about that because there had *147 been no closure. Number 66, [A.H.], she said that she had relations in Georgia close to where the Defendant is from near Stockbridge. Number 11, [D.B.], had actually been convicted of leaving the scene of an accident. While he was a good juror, we are talking about a robbery in this case. A car is leaving the scene of the accident. And, you know, I feel that that might prejudice him. 193 was [D.W.] And when I tried to engage him in conversation or catch his eye, every time that I would say anything, any statement I ever made, he would look at me and roll his eyes. So I mean, obviously you know, I just felt that that was a complete disregard for the State. And I just didn’t feel like he was going to listen to anything I had to say.
“THE COURT: [Defense counsel]?
“[DEFENSE COUNSEL]: Judge, on the issue of the one that was mentioned by the State for a disorderly conduct conviction, number 164, a black female, [T.L.S.], there were a number of individuals in this panel that had criminal convictions. I pulled all of the records. And this is the only person, a black female, that was struck because of a criminal conviction. I will give you an example. A white male, number 44, [D.D.], the State did not strike, was convicted in Dallas County in 2005 for a traffic offense. As well, Number 105, [J.C.L.], was convicted in Dallas County in 2000 for reckless driving. I’ve got one more that didn’t get marked out. Number 44 is the one that I caught because he is actually a white male that is on the jury that they did not strike that also had a conviction on here. I think the rest of them we drew out of the hat. It wasn’t an issue on those. 105 and 44 are the two white males that they did not strike, but they struck the only black female, the only reason being a disorderly conduct conviction.
[[Image here]]
“[PROSECUTOR]: ... As far as the records go, the individuals with records that I may have struck were all white individuals struck by the defense. The only one left is [D.D.] with an assault third. However, [T.L.S.] has a disorderly conduct, and that involved police officers. I mean a disorderly, you know, showing complete disrespect for police officers when in fact the State is putting on a case involving police officers is going to be different. If you want to get into [J.C.L.] — and also [D.B.] was struck, but while I thought he was a good juror, he had a leaving the scene of an accident. Everyone else that is even an issue are white jurors struck by the defense.
“THE COURT: Anything else, [defense counsel]?
“[DEFENSE COUNSEL]: As far as [J.C.L.], [he] was our eleventh strike. I intentionally waited until the one that would not be the alternate to give the State the opportunity to strike a white male with a criminal record, and they chose not to. You know, I think the record speaks where it is....
“THE COURT: The Court is going to deny the Batson motion. The Court finds that the State has articulated sufficient race-neutral reasons for all for the eleven strikes that were challenged.”
(R. 240-46.)
“In Batson the United States Supreme Court held that black veniremembers could not be struck from a black defendant’s jury because of their race. In Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), the court extended its decision in Batson to apply also to white defendants.... The United States Supreme Court in Georgia v. *148 McCollum, 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992), held that the protections of Batson were also available to defense counsel in criminal trials. The Alabama Supreme Court has held that the protections of Batson apply to the striking of white prospective jurors. White Consolidated Industries, Inc. v. American Liberty Insurance Co., 617 So.2d 657 (Ala.1993).”
Grimsley v. State, 678 So.2d 1194, 1195 (Ala.Crim.App.1995).
“After the appellant makes a timely Bat-son motion and establishes a prima facie showing of discrimination, the burden shifts to the state to provide a race-neutral reason for each strike.... See, e.g., Ex parte Bird, 594 So.2d 676 (Ala.1991). We will reverse the circuit court’s ruling on the Batson motion only if it is ‘clearly erroneous.’ Jackson v. State, 549 So.2d 616 (Ala.Cr.App.1989).”
Cooper v. State, 611 So.2d 460, 463 (Ala.Crim.App.1992).
“Once the prosecutor has articulated a nondiscriminatory reason for challenging the black jurors, the other side can offer evidence showing that the reasons or explanations are merely a sham or pretext. [People v.] Wheeler, 22 Cal.3d [258] at 282, 583 P.2d [748] at 763-64, 148 Cal.Rptr. [890] at 906 [(1978)]. Other than reasons that are obviously contrived, the following are illustrative of the types of evidence that can be used to show sham or pretext:
“1. The reasons given are not related to the facts of the case.
“2. There was a lack of questioning to the challenged juror, or a lack of meaningful questions.
“3. Disparate treatment — persons with the same or similar characteristics as the challenged juror were not struck....
“4. Disparate examination of members of the venire; e.g., a question designed to provoke a certain response that is likely to disqualify the juror was asked to black jurors, but not to white jurors....
“5. The prosecutor, having 6 peremptory challenges, used 2 to remove the only 2 blacks remaining on the venire....
“6. ‘[A]n explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically.’ Slappy [v. State], 503 So.2d [350] at 355 [ (Fla.Dist.Ct.App.1987) ]. For instance, an assumption that teachers as a class are too liberal, without any specific questions having been directed to the panel or the individual juror showing the potentially liberal nature of the challenged juror.”
Ex parte Branch, 526 So.2d 609, 624 (Ala.1987).
In this case, the defense based its Batson motion solely on the number of black veniremembers the prosecution struck.
“Alabama courts have recently held that even a showing that [a] party had ... a high percentage of strikes used against a minority was not alone enough. In Ex parte Trawick, 698 So.2d 162, 168 (Ala.1997), the Alabama Supreme Court held, “Without more, we do not find that the number of strikes this prosecutor used to remove women from the venire is sufficient to establish a prima facie case of gender discrimination.’ ”
Armstrong v. State, 710 So.2d 531, 533 (Ala.Crim.App.1997). Because the defense relied solely upon the number of black veniremembers the prosecution struck, we question whether it established a prima facie showing that the prosecution exer *149 cised its peremptory challenges in a discriminatory manner. Nevertheless,
“[w]here, as in this case, the trial court requires the opposing counsel to state reasons for the peremptory strikes without first requiring that a prima facie case of discrimination be established, this Court will review those reasons and the trial court’s ultimate decision on the Batson motion without determining whether the moving party met its burden of proving a prima facie case of discrimination.”
Harris v. State, 705 So.2d 542, 545 (Ala.Crim.App.1997).
The record supports Rice’s assertions of disparate treatment with regard to Venire-member T.L.S. and Juror D.D. The prosecution indicated that it struck T.L.S. because she had been convicted of disorderly conduct and harassment, but it conceded that it did not strike D.D., a white male, who defense counsel stated had been convicted of a traffic offense and the prosecution stated had been convicted of third-degree assault.
We addressed a similar situation in Yancey v. State, 813 So.2d 1, 7-9 (Ala.Crim.App.2001), as follows:
“Though we have held that striking a prospective juror because of a prior criminal history is a race-neutral reason, we have also held that the failure to strike both whites and blacks because of prior criminal records is evidence of disparate treatment, in violation of Batson. See Powell v. State, 548 So.2d 590 (Ala.Crim.App.1988), aff'd, 548 So.2d 605 (Ala.1989). ‘Such disparate treatment of otherwise similarly situated persons who happen to be of different racial backgrounds, would evidence discriminatory intent in the State’s use of its strikes.’ Bishop v. State, 690 So.2d 498, 500 (Ala.Crim.App.1995), on remand, 690 So.2d 502 (Ala.Crim.App.1996). See also Russell v. State, 739 So.2d 58 (Ala.Crim.App.1999); Wright v. State, 601 So.2d 1095 (Ala.Crim.App.1991); and Mitchell v. State, 579 So.2d 45 (Ala.Cr.App.1991), cert. denied, 596 So.2d 954 (Ala.1992). The prosecutor’s reasons for striking prospective jurors numbers 93, 118, and 151, evidence disparate treatment.
“As this Court stated in Powell, 548 So.2d at 593-94:
“ ‘In view of the fact that five members of the jury were in their twenties (the average age of the jury was only 31 years, 8 months) and seven members of the jury had had traffic offenses equally as serious as those of the black venirepersons who were struck by the State, we cannot escape the conclusion that the State engaged in the type of “disparate treatment” denounced in Branch. White “persons with the same or similar characteristics as the challenged [black] juror[s] were not struck.” Branch, 526 So.2d at 624. See Acres v. State, 548 So.2d 459 (Ala.Cr.App.1987) (on return to remand) (validity of prosecutor’s reasons for striking two black venirepersons because they had had traffic citations did not “stand up under close scrutiny” when record revealed that two white jurors who served on jury had similar traffic offenses). The State simply did not remove white persons for the same reasons given by the State for removing blacks. Compare Currin v. State, 535 So.2d 221 (Ala.Cr.App.1988) (“A reasonable conclusion ... is that [the prosecutor] applied the racially neutral criteria of education, employment, and demeanor to all jurors, whether black, [or] white....”) (quoting United States v. Allen, 666 F.Supp. 847, 854 (E.D.Va.1987)). See generally State v. Antwine, 743 S.W.2d 51, 65 *150 (Mo.), cert. denied, Antwine v. Missouri, [488] U.S. [1017], 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988), wherein the court found it highly relevant to consider “whether similarly situated white veniremen escaped the State’s challenges.” ’
“In Carrick v. State, 580 So.2d 31, 32 (Ala.Crim.App.1990), we stated:
“ ‘In the instant case, the State engaged in the type of disparate treatment denounced in Branch. See also Acres v. State, 548 So.2d 459 (Ala.Cr.App.1987) (wherein this Court held that the validity of the prosecutor’s reasons for striking two black venire-persons because they had had traffic citations did not “stand up under close scrutiny” when the record revealed that two white jurors who served on the jury had similar traffic offenses, at 478). Here, as in Acres, the State simply did not remove white persons for the same reasons given by the State for removing blacks.’
“ ‘ “[Disparate treatment furnishes strong evidence of discriminatory intent.” ’ Freeman v. State, 651 So.2d 576 (Ala.Crim.App.1994), quoting Ex parte Bird, 594 So.2d 676, 681 (Ala.1991), on remand, 594 So.2d 689 (Ala.Crim.App.1992). See also Kynard v. State, 631 So.2d 257 (Ala.Crim.App.1993). ‘This court has condemned the failure to strike white venirepersons who share the same characteristics as black venire-persons who were struck.’ Bishop v. State, 690 So.2d at 500.
[[Image here]]
“... The voir dire in this case covered portions of five volumes of the record. It appears that the jurors were questioned equally about their views concerning capital punishment; however, there is no discussion concerning any prospective jurors’ prior misdemeanor offenses or traffic offenses. Thus, the voir dire provides no support for some of the reasons advanced by the prosecution. From the record it appears that the prosecutor engaged in disparate treatment when striking Yancey’s jury.”
See also Carter v. State, 603 So.2d 1137 (Ala.Crim.App.1992) (finding disparate treatment between black and white venire-members where two unemployed black veniremembers were struck but two unemployed white veniremembers were not struck); Sims v. State, 587 So.2d 1271, 1277 (Ala.Crim.App.1991) (noting that “many of the traits exhibited by the black veniremembers and given as reasons for challenging them were also exhibited by white members who went unchallenged by the state”). Finally, in Miller-El v. Dretke, 545 U.S. 231, 241, 125 S.Ct. 2317, 2325, 162 L.Ed.2d 196 (2005), the United States Supreme Court reiterated:
“If a prosecutor’s proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at Batson’s third step.”
We find it relevant that the prosecution indicated that it struck Veniremember D.B., a black male, because he had been convicted of leaving the scene of an accident. We further find it relevant that the prosecutor did not ask any of the venire-members any questions about their prior convictions or the details surrounding those convictions. “[T]he failure of the State to engage in any meaningful voir dire on a subject of alleged concern is evidence that the explanation is a sham and a pretext for discrimination. Branch, 526 So.2d at 623.” Hemphill v. State, 610 So.2d 413, 416 (Ala.Crim.App.1992). See also Ex parte Bird, 594 So.2d 676 (Ala.1991); Guthrie v. State, 598 So.2d 1013 *151 (Ala.Crim.App.1992); Madison v. State, 545 So.2d 94 (Ala.Crim.App.1987).
“It is well settled that the ruling of the trial court on a Batson hearing is entitled to substantial deference and will not be disturbed on review unless it is ‘clearly erroneous.’ Scales v. State, 539 So.2d 1074 (Ala.1988).” Ex parte Bankhead, 625 So.2d 1146, 1148 (Ala.1993). For the reasons set forth above, we are compelled to conclude that the prosecutor’s reason for striking Veniremember T.L.S. was no more than a pretext for racial discrimination. “[T]he failure to articulate a sufficient race-neutral reason for excluding even a single black veniremember may entitle the defendant to a new trial. Harrell v. State, 555 So.2d 263 (Ala.1989).” Id.
“[W]hen illegitimate grounds like race are in issue, a prosecutor simply has got to state his reasons as best he can and stand or fall on the plausibility of the reasons he gives. A Batson challenge does not call for a mere exercise in thinking up any rational basis. If the stated reason does not hold up, its pre-textual significance does not fade because a trial judge, or an appeals court, can imagine a reason that might not have been shown up as false.”
Miller-El, 545 U.S. at 252, 125 S.Ct. at 2332. Accordingly, we are compelled to reverse the trial court’s judgment and to remand this case for a new trial.
REVERSED AND REMANDED.
WELCH, WINDOM, KELLUM, and MAIN, JJ., concur.