Johnny Lee Wright was indicted for the offenses of unlawful possession of cocaine, in violation of § 13A-12-212, Code ofAlabama 1975, and of unlawful possession of *Page 1096 
marijuana in the second degree, in violation of § 13A-12-214,Code of Alabama 1975. The jury found Wright guilty of the offenses as charged in the indictment, and he was sentenced to concurrent terms of 30 years' imprisonment on the cocaine conviction and 12 months' imprisonment on the marijuana conviction. Three issues are raised on appeal.
 I.
Wright contends that the trial court erred by denying his motions to suppress and to dismiss based upon an illegal arrest.
In this case, Agent Robert Chambers of the Alabama Alcoholic Beverage Control Board and other law enforcement officers were dispatched to the Hilltop Projects in Lafayette to arrest two suspects from whom Agent Chambers and Agent John Richardson had earlier purchased unlawful drugs. One of these suspects had displayed a gun during the drug purchase.
When the officers arrived at the projects, Wright and another person were standing with the two suspects from whom the officers had purchased drugs. The officers got out of their police vehicles and identified themselves as police officers. As soon as the officers identified themselves, all four individuals, including Wright, ran from the police. Agent Chambers then began chasing Wright, and Chambers saw Wright pull something out of his right coat pocket and throw it. After Wright was stopped, the officer returned to the place where he had seen Wright throw something, and the officer found three film canisters containing with green plant material and white powder. The officers believed that these canisters contained marijuana and cocaine, and they arrested Wright for possession of these illegal drugs.
Section 15-5-30, Code of Alabama 1975, permits the police to "stop any person abroad in a public place whom he reasonably suspects is committing, has committed or is about to commit a felony or other public offense and may demand of him his name, address and an explanation of his actions."
Inherent in an officer's right to stop a suspect and demand his name, address, and an explanation of his actions is the right to detain him temporarily to verify the information given or to obtain information independently of the suspect's cooperation. Walker v. City of Mobile, 508 So.2d 1209
(Ala.Cr.App. 1987). When stopping a person for investigatory purposes, the officer must be able to articulate specific facts and inferences that lead to a reasonable suspicion of criminal activity. Key v. State, 566 So.2d 251 (Ala.Cr.App. 1990).
A warrantless arrest is valid where the officer making the arrest had probable cause to effect the arrest at the time it was made. Foy v. State, 387 So.2d 321 (Ala.Cr.App. 1980).
 "Probable cause to arrest exists where the facts and circumstances within an officer's knowledge, and of which he had reasonably trustworthy information, are sufficient unto themselves to warrant a man of reasonable caution to believe that an offense has been committed or is being committed."
Smith v. State, 515 So.2d 149, 151 (Ala.Cr.App. 1987).
Applying these principles to the case at bar, it is clear that Agent Chambers had specific facts and inferences of possible criminal activity warranting his stop of Wright for investigatory purposes, even though at the time he did not have probable cause to arrest him. Wright, who was in the company of two drug dealers known to be armed, ran when the officers identified themselves as police officers.
It is also clear that the officer had probable cause to arrest Wright after he stopped him because the officer found three canisters containing material he thought to be marijuana and cocaine that he had observed Wright pull out of his right coat pocket and throw while he was being chased.
Thus, because both the investigatory stop and Wright's subsequent arrest were proper, the trial court did not err in denying Wright's motions to suppress and to dismiss. *Page 1097 
 II.
Wright contends that the prosecution systematically excluded black persons from the jury on the basis of race in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712,90 L.Ed.2d 69 (1986) and Ex parte Branch, 526 So.2d 609 (Ala. 1987).
In Batson, the United States Supreme Court stated the following concerning the State's burden of proof once a defendant makes a prima facie showing of racial discrimination:
 "Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors. Though this requirement imposes a limitation in some cases on the full peremptory character of the historic challenge, we emphasize that the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause."
476 U.S. at 97, 106 S.Ct. at 1723.
A trial court's determination that peremptory challenges were not motivated by intentional discrimination should be reversed only where that determination is clearly erroneous. Powell v.State, 548 So.2d 590 (Ala.Cr.App. 1988), affirmed,548 So.2d 605 (Ala. 1989).
"Where a prosecutor gives a reason which may be a pretext, such as age . . ., but also gives valid additional grounds for the strike, the race-neutral reasons will support the strike."Battle v. State, 574 So.2d 943, 949 (Ala.Cr.App. 1990).
In this case, the prosecution used 8 of its 18 strikes to strike blacks from the jury. Three of the jurors in this case were black. The prosecution gave the following reasons for its strikes of black jurors in this case:
 "MR. LISENBY: State's strike number one was number 106, a black female . . . who indicated to the Court that she knew Mr. Wright. In fact, was some way related to his mother, Mrs. Little. Although it did not rise to the level of challenge cause.
 "State's strike number two was number 119, a black male . . . who indicated to the Court that he could not read and write very well. I believe his statement to the Court was 'I don't believe my education qualifies me to sit on a jury.' I believe [that] was the statement he made or words to that effect.
 "State's strike number three was number 27 a white female . . . who indicated to the Court that she also could not read and write very well. Her words were similar to [juror number 119's]. She did not feel she would be qualified to sit. I would point out that defense strike number 12 was number 11 . . . who was the other individual who came up to the Court to indicate that he could not read and write well. So all three [who] had indicated to the Court that they could not read and write well were struck by either the State or the defense.
 "State's strike number four is number 14 . . . who is in the age group of 30-39 which is the age group Mr. Wright, the defendant, is in.
 "State's strike number five is number 89 a black male . . . who is also in the age group of 30 to 39. He indicated that he had a sister and uncle who had been convicted of drug crimes in the past or part of the criminal history. Also indicated that in 1985 he had been charged with battery; in 1987 had been charged with abandonment of a child.
 "State's strike number six is number 74 a white male . . . who is in the age group of 20 to 29 — as I go through my strikes I'm going to tell about all of the 20 to 29 or 30 to 39 year olds that the State struck.
 "State's strike number seven is number 110 a white male . . . who is in the age group of 20 to 29.
 "State's strike number eight is number 111 a black male . . . who is in the age group of 20 to 29.
 "State's strike number nine is number 112 . . . who is in the age group 20 to 29.
 "State's strike number ten is a white male . . . who is in the age group 20 to 29. *Page 1098 
 "And the defense struck their first strike was number three . . . who is in the age group 20 to 29.
 "Defendant's strike number seven is number 19 . . . who is in the age group 20 to 29.
 "I believe that that eliminated all of the white and black males in the 20 to 29 category. My records indicate that there were only three males, two black and one white who [were] in the 30 to 39 age category. The white male that was in that category was Mr. B., defendant's strike number 12. So all of the 20 to 29 year old and 30 to 39 year old white and black males were struck from this jury.
 "State's strike number eleven was number 39 . . . who is a white male. He was in his 70's and indicated at least on voir dire that he couldn't hear very well.
 "State's strike number twelve is number 8 . . . who is a white female in the age category of 30 to 39.
 "State's strike number thirteen was number 41 . . . who is in the age group of 30 to 39, a white female.
 "State's strike number fourteen is number 107, . . . a white female in the age group 30 to 39.
 "State's strikes fifteen is number 115, . . . a white female in the age group 30 to 39.
 "State's strike number sixteen is number 116, . . . a white female in the age group 30 to 39.
 "State's strike number seventeen was number 121, . . . a black female who is in the age group 30 to 39.
 "The defendant's . . . strike number eight is number 42, . . . a white female in the age group 30 to 39.
 "And defendant's . . . strike number thirteen was number 44, . . . was a white female in the age group 30 to 39. I believe that eliminated all of the white and black females of the age group 30 to 39.
 "State's strike number eighteen is number 87 a black male . . . who indicated that he knew the defendant, that he was aware of facts of the case. And I believe he came up to the Court and for a while was a little unclear as to whether or not he could put the facts of the case out of his mind. But the court ended up being satisfied. And that was our 18 strikes.
"THE COURT: What was reason for your age group?
 "MR. LISENBY: Mr. Wright is I believe 36, 35-36. We struck all of the younger people from 20 up to 39.
"THE COURT: All the males?
"MR. LISENBY: All the males and females —
"THE COURT: Twenty to thirty-nine.
 "MR. LISENBY: Twenty to thirty-nine all the males, correct. All of the females in the 30 to 39 age category which would have been the State strikes one, two, three, four, five white females and one black female.
 "THE COURT: It's your feeling that that age category might have some special empathy for —
 "MR. LISENBY: Yes, sir. Because of the fact as the court well knows the younger individuals based on polls and information received through the media are more likely to be people who have experimented with drugs, have been involved with drugs or know people who are involved with drugs. Whereas, the older individuals are not likely to have had that experience."
It is clear from the record set forth above that the State gave valid racial-neutral reasons for its strikes in this case. Wright contends, however, that the State did not strike all of the jurors in the 20-39 age group, and that age was a sham or pretext.
The record is clear that the State did strike all males in the 20-39 age group and all females in the 30-39 age group, whether those persons were black or white, based upon its rationale that persons in that age group were more likely to have, or to know persons who have, experimented with illegal drugs.
Hence, because the reasons advanced by the State were all reasons that have been upheld in similar Batson challenges, and *Page 1099 
because the State treated blacks and whites similarly in its strikes based upon age, the trial court properly denied Wright's Batson motion.
 III.
Wright contends that the trial court erred when it denied his motion for a mistrial after the sheriff shook a juror's hand. Wright asserts that the sheriff's greeting of this juror during the testimony of a fellow law enforcement officer distracted the juror and may have bolstered the testimony and credibility of the officer who was testifying.
A motion for mistrial implies a miscarriage of justice and is such a serious matter that it should be granted only where there is a fundamental error in the trial that would vitiate the result. Thompson v. State, 527 So.2d 777 (Ala.Cr.App. 1988). The right to declare a mistrial is within the sound discretion of the trial court, and the trial court's decision rests largely upon the issues and particular circumstances of each case. Newsome v. State, 570 So.2d 703 (Ala.Cr.App. 1989).
In this case, Wright made a motion for mistrial after he saw Sheriff Morgan shaking hands with a juror during the direct examination of Deputy Sheriff Boyd. A hearing was later held on this motion, during which the following occurred:
 "THE COURT: The Sheriff is here. Sheriff, did you shake [the juror's] hand?
 "SHERIFF MORGAN: Yes, sir. And there was no conversation. I walked behind the bannister there. About two feet before I got to [the juror. the juror] reached back over his shoulder with his left hand. I just walked by and caught his left hand and said 'How you doing' and kept walking."
It is clear from what is set forth above that the sheriff did not initiate contact between himself and this juror and that no conversation occurred. Because no miscarriage of justice occurred when the sheriff shook this juror's hand, the trial court properly denied Wright's motion for mistrial.
The foregoing opinion was prepared by the Honorable JAMES H. FAULKNER, a former Supreme Court Justice, serving as a judge of this court, and his opinion is hereby adopted as that of the Court.
The judgment of the circuit court is affirmed.
AFFIRMED.
All the Judges concur.