In April 1990, in the Baldwin Circuit Court, John Lionel Neal was convicted by a jury of the capital murder of Wilma Underwood, a murder committed during the course of a burglary. See §13A-5-40(a)(4), Ala. Code 1995. He was sentenced to death. The Court of Criminal Appeals reversed the conviction, holding that the State had violated the principles of Batson v. Kentucky, 476 U.S. 79
(1986), during its use of peremptory strikes against potential jurors. See Neal v. State, 612 So.2d 1347 (Ala. Crim App. 1992). After a second trial, in March 1994, Neal was again convicted of capital murder and, on a vote of 10-2, the jury again recommended death. The trial court followed the jury's recommendation and sentenced him to death by electrocution. The Court of Criminal Appeals affirmed the conviction and sentence. See Neal v. State, [Ms. CR-93-1208, Aug. 22, 1997]731 So.2d 609 (Ala.Crim.App 1997), for a detailed statement of the pertinent facts. We granted certiorari review pursuant to Rule 39(c), Ala. R. App. P.
Neal presents six issues for review, all of which were argued in the Court of Criminal Appeals and all of which were adequately addressed by that court. However, we will further address two of these issues — issues Neal's counsel specifically addressed at oral argument: (I) Whether *Page 623 
the trial court erred in denying Neal's motion for a change of venue, and (II) Whether the trial court erred in denying Neal's motion to set aside the jury's advisory verdict of death. We have carefully considered the opinion of the Court of Criminal Appeals and the oral argument made by Neal's counsel, and we have examined the record for any plain error, pursuant to Rule 39(k), Ala. R. App. P. We find no error in the guilt phase or in the sentencing phase of Neal's trial, and we conclude that the judgment of the Court of Criminal Appeals is due to be affirmed.
 I.
Neal argues that the trial court committed reversible error by denying his motion for a change of venue. He argues that Baldwin County was inundated with articles and stories about his alleged crime, appearing in six major newspapers and on local television and radio stations. Neal contends that the media described the charged acts in detail, including significant portions of documentary and hearsay evidence relating to him. Due to significant pretrial publicity, Neal maintains, he was unable to obtain a fair trial in Baldwin County. The State argues that Neal failed to show that he was actually prejudiced or that the community was saturated with prejudicial publicity.
In Ex parte Grayson, 479 So.2d 76, 80 (Ala.), cert. denied,474 U.S. 865 (1985), we articulated the standard for determining whether to grant a defendant's motion for a change of venue on the basis of publicity surrounding a criminal case:
 "Absent a showing of abuse of discretion, a trial court's ruling on a motion for change of venue will not be overturned. In order to grant a motion for change of venue, the defendant must prove that there existed actual prejudice against the defendant or that the community was saturated with prejudicial publicity. Newspaper articles or widespread publicity, without more, [is] insufficient to grant a motion for change of venue. . . .
 "The standard of fairness does not require jurors to be totally ignorant of the facts and issues involved. Thus, "[t]he proper manner for ascertaining whether adverse publicity may have biased the prospective jurors is through the voir dire examination."
Ex parte Grayson, 479 So.2d at 80 (citations omitted).
We, therefore, must determine whether Neal showed that he was actually prejudiced by pretrial publicity surrounding his case. We have thoroughly reviewed the transcript of the voir-dire examination of the jury venire, but we find nothing there or elsewhere in the record to suggest that the jurors selected for the trial jury could not render a verdict based solely on the evidence presented at the trial.
The transcript of the voir-dire examination indicates that more than 50% of the potential jurors acknowledged some awareness of the murder, which occurred in Foley, in Baldwin County, in 1987. However, the jury venire was examined extensively and thoroughly over a two-day period, regarding each juror's knowledge and feelings about the case; they were examined both as a group and individually. Counsel for Neal and counsel for the State were allowed to question each veniremember directly concerning the actual extent of his or her knowledge of the case.
The fact that several potential jurors had knowledge of the case did not prevent Neal from receiving a fair and impartial trial. Potential jurors who during the one-on-one examinations recalled details of the murder and expressed reservations or fixed opinions about Neal's guilt or innocence were promptly dismissed for cause. Of the remaining jurors, those who stated that their knowledge would not prejudice their judgment and that they could be objective in rendering a verdict were allowed to remain on the venire. Over a two-day period, the trial court allowed potential *Page 624 
jurors to be meticulously questioned.
Neal also argues that potential jurors discussed the case while on break from voir-dire examination. One prospective juror stated that she overheard another make a comment to the effect that Neal was guilty at the first trial and was guilty at this second trial. The juror who said she overheard the comment identified the juror who she said made the comment. The juror who made the comment and two other jurors who had overheard the comment were readily dismissed, as well as the juror who initially said that she had overheard the comment. Another juror stated that he had overheard two jurors talking and that one of them was stating that Neal was guilty. After being identified by the juror who heard the two men talking, the juror who had made the statement was dismissed from the venire. The juror to whom the statement was made had already been dismissed. It is evident from the record that the trial court meticulously took steps to alleviate possible juror prejudice by dismissing any jurors with preconceived impressions or prejudices concerning the case.
As stated in Grayson, a defendant is not entitled to jurors who are totally ignorant of the facts and issues of the case. Id. Furthermore, there was probably less knowledge of the case by jurors at Neal's second trial than at the first trial, because seven years had elapsed between the time of the murder and the time of Neal's second trial. Accordingly, we conclude that the trial court did not abuse its discretion in holding that Neal had failed to show that he was actually prejudiced by pretrial publicity.
Neal also argues that pretrial publicity prevented him from receiving a fair trial in Baldwin County, which he says is a small county where the victim was well known and well liked. However, a change of venue will be granted only if the defendant shows that the pretrial publicity has "so pervasively saturated" the community "as to make the court proceedings nothing more than a `hollow formality.'" Hart v. State, 612 So.2d 520, 526-27 (Ala.Crim.App.), affirmed, 612 So.2d 536 (Ala. 1992), cert. denied, 508 U.S. 953 (1993) (citing Rideau v. Louisiana, 373 U.S. 723 (1963)).
In support of his motion for a change of venue, Neal presented evidence of several excerpts from newspaper articles. Reviewing the articles presented at the hearing for the change of venue, we conclude that Neal established that there had been considerable pretrial publicity in Baldwin County surrounding this case. However, the publicity was not sensational, accusatory, nor denunciatory.
The news articles presented by Neal include factual summaries of the case. The articles relate such information as the case history, the offense of which Neal was accused, the identity of the victim, the place of Neal's capture, the fact that Neal was found competent to stand trial, and the fact that he had been found guilty and had been granted a new trial. The articles do not accuse Neal of murder, nor do they sensationalize the trial. "`Newspaper articles alone would not necessitate a change of venue unless it was shown that the articles so affected the general citizenry through the insertion of such sensational, accusatory or denunciatory statements, that a fair and impartial trial was impossible.'" Oryang v. State, 642 So.2d 989, 992 (Ala.Crim.App. 1994), quoting earlier cases. That is not the situation in this case.
Neal also presents the results of a survey conducted in 1987 by Dr. James Rosene, a professor at the University of South Alabama, to show the knowledge Baldwin County residents had of Neal's case. Dr. Rosene's staff surveyed approximately 400 Baldwin County residents through random telephone calls. Eighty percent of the respondents had heard about the Neal case, and 22% admitted *Page 625 
that they thought Neal was guilty. We recognize that there was widespread media coverage of this case in Baldwin County. However, it must not be overlooked that Dr. Rosene's survey was conducted in 1987, the same year the victim was murdered. Neal's second trial and conviction — now on review — took place in 1994, seven years after Dr. Rosene's survey and seven years after the majority of the publicity of this case had occurred. "The passage of time cannot be ignored as a factor in bringing objectivity to a case in which there has been extensive pre-trial publicity." Holladay v. State,549 So.2d 122, 126 (Ala.Crim.App 1988), affirmed,549 So.2d 135 (Ala.), cert. denied, 493 U.S. 1012 (1989).
Although in some cases pretrial publicity may be so inherently prejudicial as to make a fair and impartial trial impossible in a particular locality, this case does not present such a situation. See Murphy v. Florida, 421 U.S. 794 (1975) (most of the jury venire had fixed opinions that cast doubt upon the jury as a whole); Sheppard v. Maxwell, 384 U.S. 333 (1966) (media practically took over entire courtroom); Estes v. Texas, 381 U.S. 532 (1965) (defendant's trial was televised and sensationalized). However, Neal has not shown that he could not have a fair and impartial trial in Baldwin County.
Neal has failed to show that the pretrial publicity in this case was inherently or presumptively prejudicial or that there was actual juror prejudice. The trial court, therefore, did not abuse its discretion in denying his motion for a change of venue.
 II.
Neal argues that the trial court committed reversible error in denying his motion to set aside the jury's advisory verdict of death and in quashing subpoenas of jurors and newspaper reporters.
On March 9, 1994, Neal moved to set aside the jury's advisory verdict, based upon an article that appeared in The Onlooker newspaper. In that article, an unnamed juror stated that the severity of the murder led the jury to recommend the death penalty. On March 31, 1994, Neal renewed his motion to set aside the jury verdict of guilt and the advisory verdict of death, and in support of his motion he submitted an article from the March 26, 1994, edition of the Gulf Coast Newspaper in which another unnamed juror discussed the history of the case. Neal subpoenaed the jurors and the newspaper reporter who had written the story to testify on the motion to set aside the jury's advisory verdict. The subpoenas were quashed. The trial court accepted the jury's advisory verdict and sentenced Neal to death, on April 8, 1994.
Neal seeks to impermissibly impeach the jury's advisory verdict by showing that jurors improperly considered the brutality of the murder as an aggravating circumstance not charged by the court, and improperly considered the procedural history of the case.
As a general rule, Alabama law does not permit the use of jurors' affidavits or their testimony for impeachment of a jury verdict. See Barbour v. State, 673 So.2d 461, 469 (Ala.Crim.App. 1994), affirmed, 673 So.2d 473 (Ala.), cert. denied, 518 U.S. 1020 (1996) (quoting Alabama Power Co. v. Turner, 575 So.2d 551, 556-57 (Ala.), cert. denied, 500 U.S. 953 (1991)). The law recognizes an exception when affidavits or testimony show that extraneous facts influenced jury deliberations and ultimately the jury verdict. Barbour, 673 So.2d at 469.
Neal cites Clarke-Mobile Counties Gas District v. Reeves,628 So.2d 368 (Ala. 1993), to support his assertion that the "extraneous facts" exception is applicable to this case. In Reeves, we held that a juror's statement made during deliberations, regarding her son's prior dealings *Page 626 
with the defendant in a situation similar to the one presented in that case, fell within the "extraneous facts" exception. Id. at 370. However, unlike the party in Reeves, Neal has failed to show that the jury considered the extraneous facts he alleges.
In order to show that the jury considered an aggravating circumstance not charged by the trial court, namely the brutality of the murder, Neal would have to analyze the jury's deliberations. However, "`the debates and discussions of the case by the jury while deliberating thereon do not fall within the exception to the [anti-impeachment] rule.'" Barbour, 673 So.2d at 469. The judicial system encourages jurors to deliberate freely and to reach a verdict without fear of post-trial harassment, publicity, or scrutiny. See Warner v. Elliot, 573 So.2d 275, 278 (Ala. 1990). To scrutinize the jury deliberations to determine if the jury considered the brutality of the murder would obstruct the freedom of jury deliberation.
Furthermore, the juror's comment regarding the brutality of the murder appeared in The Onlooker on March 9, 1994, four days after the jury had rendered the advisory verdict on March 5. Neal failed to show that the comment was made before the jury rendered the advisory verdict, thereby linking the article with the deliberations.
Neal also argues that the jury improperly considered the procedural history of the case. As previously stated, the record reflects that the jurors underwent two days of extensive voir-dire examination. Although some jurors knew of the history of the case, those jurors who showed any bias were stricken from the venire along with those whose examination indicated they could not objectively render a verdict. Neal presented nothing that would support a holding that the fact that some jurors had knowledge of the history of the case required a conclusion that the jurors considered extraneous facts. Having knowledge of the case does not mean that those who had that knowledge could not be, and were not, impartial in rendering a verdict. Neal presented no evidence indicating that the jurors considered any evidence other than that brought out during the trial. We find no error by the trial court in quashing Neal's subpoenas and denying his motion to set aside the jury's advisory verdict.
We have fully considered each of the issues raised by Neal's counsel, and we have independently searched the record for plain error. Having read the record and the briefs of counsel, we find no reversible error in the proceedings below. The judgment of the Court of Criminal Appeals is due to be affirmed.
AFFIRMED.
Hooper, C.J., and Maddox, Shores, See, and Lyons, JJ., concur.