Antonio Dewan Russell was convicted of murder made capital because it occurred during the course of committing a theft, see §13A-5-40(a)(2), Ala. Code 1975. Russell was tried before a jury on the charge of capital murder based on the allegation that on April 4, 1995, he shot and killed Betty Daniel Huckeba during an armed robbery of Huckeba's Flea Market, located in Opelika.[1]
Following a guilty verdict, the trial court adjudicated Russell guilty and sentenced him to life imprisonment *Page 60 
without the possibility of parole. Russell raises five issues on appeal.
 I.
Russell contends that he was denied a fair and impartial trial because the trial court failed to grant his motion requesting that the district attorney be disqualified as the prosecutor in the case.[2] It appears that Russell is arguing that because of an alleged conflict of interest between the district attorney and counsel representing him at his transfer hearing in the juvenile court, the district attorney should have recused himself from trying the case in the circuit court. Russell asserts that his counsel at his juvenile transfer hearing, Dewey Teague, was married to a secretary in the district attorney's office, and that at the time of the transfer hearing, Teague's wife was acting as both Teague's legal secretary and a secretary for the district attorney.
Specifically Russell argued:
 "[I]n light of the conflict of interest that Mr. Teague has in representing this case and in light of the mutual employee or person who has access to information of both the District Attorney's file and the attorney who was appointed to represent Mr. Russell in Juvenile Court, that Mr. Myers [the district attorney] should be recused or disqualified from proceeding further in this case, and that it ought to be a case . . . which the Attorney General's office should handle."
R. 62.
Russell argues that the district attorney should have recused himself based on the following facts. Teague stated at the hearing on the motion to disqualify the district attorney, that he was appointed to represent Russell for the limited purpose of the April 17, 1995, juvenile transfer hearing only. Teague explained that at that time that he was in the process of moving his law office and that he no longer had a secretary. He stated that the trial court knew his wife worked in the district attorney's office and he informed the court that he was planning for her to do whatever typing his law practice required until he established his new office. However, Teague stated that his wife never did any typing for him. According to Teague, his wife did not have anything to do with his preparation for Russell's transfer hearing and she was not privy to any files or information he had that related to that proceeding. Teague was not appointed to represent Russell in the circuit court.
Russell's argument fails for three reasons. First, because Teague did not represent Russell at his trial in circuit court there was no conflict of interest between his trial counsel and the district attorney. The conflict, if any, occurred at the transfer hearing, and that issue has been decided adversely to Russell on his appeal from his denial of a Rule 32, Ala.R.Crim.P., petition he filed challenging his transfer order.[3] Thus, he cannot claim that the district attorney should have recused himself due to a conflict of interest with Teague. Second, Russell has previously challenged the juvenile court's order transferring him to the circuit court for prosecution as an adult in a Rule 32 petition.[4] He *Page 61 
[EDITORS' NOTE: THIS PAGE CONTAINED FOOTNOTES.] *Page 62 
asserted in that petition that counsel was ineffective because, he said, a conflict existed between his counsel and the district attorney's office. Specifically, he asserted "[t]hat he was `denied effective assistance of counsel due to a conflict of interest between the attorney representing him and the office of the district attorney.'" A.D.R. v. State, [Ms. CR-96-1241, August 14, 1998]733 So.2d 904 (Ala.Cr.App. 1998). The circuit court, denying the Rule 32 petition, ruled in pertinent part: "There is nothing in the record to indicate any conflict of interest which rendered counsel ineffective." On appeal from the denial of Russell's Rule 32 petition, we affirmed, by an unpublished memorandum, the circuit court's ruling that no conflict of interest existed between counsel and the district attorney's office. We ruled that the circuit court's findings of fact on this issue were supported by the record and were sufficient to support the denial of the petition. Thus, there has already been a factual determination that no conflict of interest existed between the defense and the prosecution; that determination was made at the juvenile transfer hearing.
In the present appeal, Russell presents the same conflict of interest claim, but rather than asserting that the conflict rendered trial counsel ineffective, he asserts that the district attorney should have recused himself. He does so to no avail. Russell is collaterally estopped from raising this issue. "`[The r]equirements for collateral estoppel to operate are (1) issue identical to one involved in previous suit; (2) issue actually litigated in prior action; and (3) resolution of the issue was necessary to the prior judgment.'" McNeely v. Spry Funeral Home ofAthens, Inc., 724 So.2d 534, 538 (Ala.Civ.App. 1998) (quotingAdams v. Carpenter, 566 So.2d 236, 242 (Ala. 1990)). That no conflict of interest existed between Teague and the district attorney was decided in the proceeding relating to his Rule 32 petition. The doctrine of collateral estoppel bars relitigation of this issue. The district attorney had no reason to recuse himself from this case.
Third, "`[t]he burden is on the party seeking recusal to present evidence establishing the existence of bias or prejudice.'" Ex parte Knotts, 716 So.2d 262, 266 (Ala.Cr.App. 1998) (quoting Ex parte Grayson, 665 So.2d 986, 987 (Ala.Cr.App 1995)). Russell has not demonstrated that he suffered any prejudice at the transfer hearing as a result of the alleged conflict of interest between counsel and the district attorney. In his argument that the district attorney should have been disqualified from prosecuting the case, Russell implies that Teague's failure to appeal the transfer order was evidence that a conflict existed. However, the fact that no appeal was taken from the transfer hearing has nothing to do with the propriety of the district attorney's prosecution of this case.
The trial court properly denied Russell's motion to disqualify the district attorney from prosecuting the case.
 II.
Russell contends that the trial court erred when it denied his motion for a change of venue. He argues that allegedly pervasive pretrial publicity and the prevailing community attitudes prevented him from receiving a fair trial in Lee County.[5]
At the hearing on the motion for a change of venue, Russell presented, through testimony and exhibits, numerous radio, television, and newspaper accounts of the incident, including newspaper headlines announcing Russell's confession. *Page 63 
During the hearing on the motion in August 1995, the trial court noted that the trial was not scheduled to begin until November 1995. The trial court then interjected the following concerning the motion for a change of venue:
 "This motion to change venue at this time will be denied. When we get up to trial time, and I am conducting the questioning process of potential jurors, a final decision on that motion will be made at that time, if it's determined that jurors have been influenced to such an extent by pretrial publicity that they cannot fairly judge this case, and then, at that time the motion to change venue would be reconsidered.
". . . .
 "But you go ahead. I am going to let you . . . put anything you want before me. I will look at it between now and then.
R. 74. At the conclusion of the hearing the trial court ruled as follows:
 "Now, after voir dire of jurors is conducted in November, if the case is tried in November as scheduled, if it's determined that what you say is correct, then the matter of change of venue will be looked at again.
 "But until such time as that is done, your motion is — for the time being — denied."
R. 120.
In November, at the conclusion of the voir dire, which included written questions concerning pre-trial publicity submitted by the parties and asked of the venire by the trial court, Russell renewed his motion for a change of venue. In support of his motion, he argued that "a third to forty percent of all the jurors we have questioned today have been dismissed because of pretrial publicity." R. 544. The trial court denied the motion, ruling that 56 jurors remained who were unaffected by pretrial publicity and that that was a sufficient number from which to select a jury. Specifically, the trial court stated:
 "I think the fact that you have 56 people left who have not been affected by pretrial publicity is more significant — most of whom don't even read the newspapers. So it's apparent to me that based on the responses individually from those potential jurors over the last couple of hours, we can select an impartial jury from the trial of this case, and you have 56 names of those who have clearly indicated to the Court that they can be fair and impartial to both sides, and because of that, your motion for change of venue is denied."
R. 545.
 "In Ex parte Grayson, 479 So.2d 76, 80 (Ala.), cert. denied, 474 U.S. 865, 106 S.Ct. 189, 88 L.Ed.2d 157 (1985), we articulated the standard for determining whether to grant a defendant's motion for a change of venue on the basis of publicity surrounding a criminal case:
 "`Absent a showing of abuse of discretion, a trial court's ruling on a motion for change of venue will not be overturned. In order to grant a motion for change of venue, the defendant must prove that there existed actual prejudice against the defendant or that the community was saturated with prejudicial publicity. Newspaper articles or widespread publicity, without more, [is] insufficient to grant a motion for change of venue. . . .
 "`The standard of fairness does not require jurors to be totally ignorant of the facts and issues involved. Thus, "the proper manner for ascertaining whether adverse publicity may have biased the prospective jurors is through the voir dire examination."'"
Ex parte Neal, [No. 1971139, January 8, 1999] 731 So.2d 621, (Ala. 1999). In the present case, Russell has not shown that he was actually prejudiced by the pretrial publicity surrounding his case. There is nothing in the record "to suggest that the jurors selected for the trial jury could not render a verdict based solely on *Page 64 
the evidence presented at the trial." Ex parte Neal, 731 So.2d at 623. While most of the jurors were aware of the murders, the voir dire disclosed, by Russell's own account, that the opinions of less than one-half the venire was actually tainted by pretrial publicity. See, Ex parte Neal, supra. The jury venire was examined thoroughly regarding each juror's knowledge and feelings about the case. See, Ex parte Neal, supra. The parties submitted to the trial court questions concerning the actual extent of the veniremembers' knowledge of the case; those questions were asked of the veniremembers. See, Ex parte Neal, supra. Only veniremembers who stated that their knowledge would not prejudice their judgment and that they could be objective in rendering a verdict were allowed to remain on the venire. See, Exparte Neal, supra. "[A] defendant is not entitled to jurors who are totally ignorant of the facts and issues of the case." Exparte Neal, 731 So.2d at 624. "`A defendant is entitled to a change of venue if he can demonstrate to the trial court that he cannot receive a fair and impartial trial in the county where he is to be tried.' § 15-2-20, Ala. Code 1975." Burgess v. State, [Ms. CR-93-2054, November 20, 1998] ___ So.2d ___, ___ (Ala.Cr.App. 1998). "[A] change of venue will be granted only if the defendant shows that the pretrial publicity has `so pervasively saturated' the community `as to make the court proceedings nothing more than a "hollow formality."'" Ex parte Neal, 731 So.2d at 624. (quotingHart v. State, 612 So.2d 520, 526-27 (Ala.Cr.App. 1992). Russell has not shown that publicity in this case was inherently or presumptively prejudicial or that there was actual juror prejudice. The trial court, therefore, did not abuse its discretion in denying Russell's motion for a change of venue.
 III.
Russell contends that the trial court erred when it denied his motion challenging the prosecution's peremptory strikes against blacks and against all persons under the age of 25 years, in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712,90 L.Ed.2d 69 (1986).
Russell argues that the prosecutor engaged in purposeful racial discrimination by using five of nine peremptory challenges[6] to remove black prospective jurors from the venire and that the prosecutor also discriminated against the five prospective jurors based on their age. In an abundance of caution the trial court ruled that Russell had made a prima facie case of discrimination and requested that the prosecutor give his reasons for the five challenged strikes.[7] The prosecutor stated that all veniremembers under the age of 25 were struck because of their immaturity. R. 558. Specifically, the prosecutor stated the following concerning the five jurors: Juror number 21 was struck because that juror was 23 years old. Juror number 52 was struck because she is the mother of Gerald Drill, a man that the prosecutor had prosecuted many times in his career and who was then serving a sentence of life imprisonment. Juror number 82 was struck because he was 24 years old and because he said he had heard about the case "on the streets." Juror number 78 was struck because he stated that "the Defendant looked innocent to him" (R. 561), and because he appeared confused and appeared not to understand the questions asked of him, and because he indicated that he knew Russell's father and that he saw him all the time in Opelika. Juror number 58 was struck because she was 23 years old and because she stated that *Page 65 
when something came on television about the murder she would not watch. The prosecutor stated that he thought this was an unusual response and he suggested that the juror was trying very hard to be selected to serve on the jury; the prosecutor found this suspicious. In addition to the five challenged strikes, the prosecutor stated that he also struck veniremembers number 85 and number 80, who were white and who were 24 and 23 years in age.
The trial court denied Russell's Batson motion, ruling that the prosecution had provided race-and age-neutral reasons for each of the five challenged peremptory strikes. The trial court also noted that Russell had used all of his strikes to remove white veniremembers and that seven black veniremembers were selected to serve on the jury. We agree with the trial court's denial of the Batson motion for the following reasons.
"A trial court's determination that peremptory challenges were not motivated by intentional discrimination should be reversed only where that determination is clearly erroneous."Wright v. State, 601 So.2d 1095, 1097 (Ala.Cr.App. 1991). "Our supreme court has recognized that, although `the age rationale is highly suspect because of its inherent susceptibility to abuse,'Ex parte Bird, 594 So.2d [676] at 683, [Ala. 1991,] in certain cases age may serve as a legitimate race-neutral reason for a peremptory strike." Bruner v. Cawthon, 681 So.2d 161, 170
(Ala.Civ.App. 1995) (citing Harrell v. State, 555 So.2d 263, 268
n. 1 (Ala. 1989). The district attorney explained that he thought maturity was an important factor in this case; therefore, he struck all veniremembers — white and black — who were under the age of 25. "[B]ecause the State treated blacks and whites similarly in its strikes based upon age, the trial court properly denied [Russell's] Batson motion." Wright v. State, 601 So.2d 1095,1099 (Ala.Cr.App. 1991) ("[T]he State did strike all males in the 20-39 age group and all females in the 30-39 age group, whether those persons were black or white, based upon its rationale that persons in that age group were more likely to have, or to know persons who have, experimented with illegal drugs"). Where there is no disparate treatment among veniremembers, the trial court's finding of neutrality in the use of peremptory strikes is not clearly erroneous. Mitchell v. State, 579 So.2d 45,47 (Ala.Cr.App. 1991); Ward v. State, 539 So.2d 407, 408
(Ala.Cr.App. 1988). Thus, the prosecutor provided a race-neutral reason for striking veniremembers numbers 21, 58, and 82 based on their age. The prosecutor provided a race-neutral reason for striking veniremember number 52, whose son is a convicted criminal. "`Striking the relative of a person who has been convicted of a crime is racially neutral.'" Ex Parte Brown,686 So.2d 409, 418 (Ala. 1996) (quoting Ex parte McNair, 653 So.2d 353,356 (Ala. 1994)). The prosecutor provided a race-neutral reason for striking veniremember number 78, who was struck because he stated that "the Defendant looked innocent to him" (R. 561), and because he appeared confused and appeared not to understand the questions asked of him, and because he indicated that he knew Russell's father and saw him all the time in Opelika. "The fact that a prospective juror knows the defendant or his family is a valid race-neutral reason for striking that juror." Temmis v.State, 665 So.2d 953, 953 (Ala.Cr.App. 1994); Bennett v. State,623 So.2d 427, 428 (Ala.Cr.App. 1993). Moreover, "the demeanor of a juror can also provide a sufficiently race-neutral explanation for a prosecutor's use of a peremptory challenge. . . . [T]he way in which a person behaves or conducts himself, can include a number of characteristics, such as . . . perceived favoritism toward the accused." Stephens v. State, 580 So.2d 11,19 (Ala.Cr.App. 1990).
The prosecutor's explanations for the challenged peremptory strikes were all reasons that have been upheld in prior Batson
challenges. The trial court correctly denied Russell's Batson
motion. *Page 66 
 IV.
Russell, who was 15 years old at the time of the offense, contends that the trial court erred by denying his motion to suppress his custodial statement given to police. Specifically, he asserts that his statement was not voluntarily given in accordance with Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966), because when he made the statement he was only 15 years old, because he has a learning disability, because he was taken from his home and away from his parents before he made the statement, and because he was questioned between 11:30 p.m. and 2:00 a.m.
Rule 11(A), Ala.R.Juv.P., requires that the person taking a child into custody inform the child of the "reason for the child's being taken into custody" and that "if the child's counsel, parent, or guardian is not present, then the child has the right to communicate with them, and that, if necessary, reasonable means will be provided for the child to do so." Rule 11(A)(1) and (2), Ala.R.Crim.P.
 "Rule 11(B), Ala.R.Juv.P., commonly referred to as the `juvenile Miranda' or `SuperMiranda' rights, enumerates the rights of a child who is in custody but who has not yet been questioned. It provides as follows:
 "`Before the child is questioned about anything concerning the charge on which the child was arrested, the person asking the questions must inform the child of the following rights:
"`(1) That the child has the right to counsel;
 "`(2) That if the child is unable to pay a lawyer and if the child's parents or guardian have not provided a lawyer, one can be provided;
 "`(3) That the child is not required to say anything and that anything the child says may be used against the child;
 "`(4) That if the child's counsel, parent, or guardian is not present, then the child has a right to communicate with them, and that, if necessary, reasonable means will be provided for the child to do so.'"
Little v. State, [Ms. CR-96-1071, December 18, 1998] 739 So.2d 539
(Ala.Cr.App. 1998).
Officer Ronald Robertson testified at the suppression hearing that on the night of April 4, 1995, he went to Russell's house and took Russell into custody. Robertson stated that Russell's father was present when he arrived at Russell's house and that Robertson explained why he had come and asked Russell's father if Russell could come to the police department for questioning. Russell's father had no objection. Robertson testified that he informed the father that he had a right to be present during questioning, but the father did not indicate that he wanted to be present, and he did not go to the police station. R. 856. Robertson testified that at 11:55 p.m. Russell was advised of his juvenile Miranda
rights and he voluntarily signed a waiver-of-rights form. Russell appeared to understand these rights, and he stated that he was willing to make a statement without an attorney present. Russell was not threatened, promised a reward or hope of a reward, or induced in any way to give a statement. Russell gave an oral statement, which was reduced to writing by Robertson. The statement contains Russell's confession to the robbery and murders. Russell read the statement as written by Robertson and stated that its contents were true. Russell did not appear to have trouble reading. He signed the statement acknowledging his verification of its contents.
Dorothy Russell, Russell's mother, testified that she was at work when the police took her son. She arrived home at approximately 12:15 a.m. and her husband told her that the police had taken Russell to the police station. She stated that she did not see Russell until the police and Russell arrived at the house around 2:00 a.m. At that time the police executed a *Page 67 
search warrant they had obtained for the house. She testified that when Russell was arrested for this crime he was in the ninth grade and was attending school at the Brown Center. The Brown Center provides schooling for disruptive students as well as those students with learning disabilities. She stated that Russell had not been in any classes for the learning disabled when he attended Opelika High School and that the "main reason he was in the Brown School is because he was disruptive in the public school system." R. 871.
The trial court did not err in denying the appellant's motion to suppress. The record reflects that Russell and his father were advised of the reason Russell was being taken to the police station and were told that the father could come too. Russell was advised of his juvenile Miranda rights; there is nothing in the record to suggest that a mental disability prevented his understanding all of the rights read to him by the police. Moreover, "[t]he low intelligence of a defendant does not render a statement involuntary absent a showing of coercion, threats, or promises by the police." Patterson v. State, 659 So.2d 1014, 1017
(Ala.Cr.App. 1995). There was no showing of coercion, threats, or promises by the police in this case. There was no evidence whatsoever regarding the affects of the late hour on Russell's free will to give a statement. There was no evidence suggesting that Russell was fatigued, that his will was overborne, or that he was sleepy at the time of the interrogation.
Moreover, "[a] trial court's ruling based upon conflicting evidence given at a suppression hearing is binding on this court, and its ruling will not be disturbed on appeal unless it is palpably contrary to the weight of the evidence." Mangione v.State, [Ms. CR-96-0080, June 19, 1998] 740 So.2d 444 (Ala.Cr.App. 1998). The trial court's ruling in this case is not against the great weight of the evidence. The trial court properly denied the appellant's motion to suppress, finding that the appellant's statement was knowing and voluntary.
 V.
Russell contends that his trial counsel rendered ineffective assistance. This issue is being raised for the first time on appeal; therefore, it has not been preserved for appellate review. "In order for a claim of ineffective assistance of counsel to be properly preserved for review on direct appeal, it must be presented in a motion for a new trial before the 30-day jurisdictional time limit for new trial motions set by Rule 24.1(b), Ala.R.Crim.P., expires. Ex parte Ingram, 675 So.2d 863
(Ala. 1996)." Frith v. State, [Ms. CR-97-0617, August 14, 1998]729 So.2d 352 (Ala.Cr.App. 1998).
Russell was sentenced on February 1, 1996. The case action sheet does not reflect that a motion for a new trial was filed. On March 6, 1996, beyond 30 days from sentencing, new counsel was appointed to represent Russell on appeal. "In Ingram, the Alabama Supreme Court held that `when a defendant makes a claim of ineffective assistance of trial counsel, and that claim cannot reasonably be presented in a new trial motion filed within the 30 days allowed by Rule 24.1(b), Ala.R.Crim.P., the proper method for presenting that claim for appellate review is to file a Rule 32, Ala.R.Crim.P., petition for post-conviction relief.'" Frith v.State, [Ms. CR-97-0617, August 14, 1998] 729 So.2d 352
(Ala.Cr.App. 1998) (quoting Ingram, 675 So.2d at 866).
Based on the above, we find no error with the trial court's rulings and affirmed Russell's conviction for capital murder.
AFFIRMED.
Long, P.J., and McMillan, Baschab, and Fry, J.J., concur.
[1] Two other women were killed as a result of the shooting. Apparently, Russell is being tried separately for each murder.
[2] The record does not contain such a motion.
[3] A.D.R. v. State, (NO. 98-1241) 733 So.2d 904 (Ala.Cr.App. 1999) (table).
[4] The complex and sometimes confusing procedural history of this case is set out in A.D.R. v. State, [Ms. CR-96-1241, August 14, 1998] 733 So.2d 904 (Ala.Cr.App. 1998), and quoted in pertinent part below.
 "In April 1995, the appellant was charged with four counts of capital murder, based upon the deaths of three people. The district attorney moved to transfer the appellant to circuit court for prosecution as an adult, pursuant to § 12-15-34, Code of Alabama 1975. On April 17, 1995, following a hearing, the juvenile court ordered that the appellant be transferred to circuit court for prosecution as an adult. Apparently neither the appellant's attorney in the juvenile proceedings nor the juvenile court judge informed the appellant of his right to appeal the transfer order. After the 14-day period for appeal from the transfer order (see Rule 28, Ala.R.Juv.P.) had expired, the circuit court appointed new counsel to represent the appellant in circuit court.
 "On May 10, 1995, the appellant, through his newly appointed counsel, filed a motion in the juvenile court seeking a rehearing on the decision to transfer him to circuit court for prosecution as an adult. The rehearing motion was denied on May 15, 1995. On June 16, 1995, the appellant's appeal to this Court from the denial of the rehearing motion was dismissed, without opinion. A.D.R. v. State, 678 So.2d 816 (Ala.Cr.App. 1995) (table).
 "On November 1, 1995, the appellant, through counsel, challenged the juvenile court's transfer order by filing a petition with the juvenile court that was styled as a Rule 32, Ala.R.Crim.P., petition for `relief from judgment.' In support of that petition, the appellant argued, in pertinent part, that his counsel in the transfer proceedings had been ineffective. The district attorney did not address the appellant's allegations, but instead moved to dismiss the petition on the ground that a Rule 32 petition was not the appropriate method by which to challenge a juvenile court's transfer order. On November 3, 1995, the juvenile court dismissed the petition. The appellant appealed the dismissal of his petition to this Court. This Court dismissed the appeal in an unpublished memorandum, holding that Rule 32 did not apply to juvenile transfer proceedings. A.D.R. v. State, 687 So.2d 231 (Ala.Cr.App. 1996) (table); see Rule 54, Ala.R.App.P.
 "The Alabama Supreme Court granted the appellant's petition for a writ of certiorari and reversed the judgment of this Court. . . .
". . . .
 "On remand from the Alabama Supreme Court, this Court reversed the judgment of the juvenile court and remanded the case with instructions that the juvenile court allow an out-of-time appeal of the transfer order. A.D.R. v. State, 690 So.2d 1210 (Ala.Cr.App. 1997). The appellant sought guidance from this Court as to how to proceed following our order of remand. Pursuant to our instructions, the appellant filed a new appeal in this Court. A new docket number was assigned to the appellant's current appeal [CR-96-1241].
". . . .
 "We are convinced from our reading of Ex parte A.D.R.
[,690 So.2d 1208 (Ala. 1996),] that what the Supreme Court intended was that the appellant be allowed to pursue his allegations of ineffective counsel by means of the Rule 32 petition, which the juvenile court had summarily dismissed. Our previous order of remand should therefore have instructed the juvenile court to consider the appellant's Rule 32 petition. Instead, however, because of the lack of clear guidance from the Alabama Supreme Court, we simply instructed the juvenile court to grant an out-of-time appeal.
 "Based on our confusing remand order, the appellant then filed the present appeal, asserting the same issues of ineffective assistance of counsel that he had previously presented in the Rule 32 petition.
 "As noted above, the state argues that these allegations of ineffective assistance of counsel are not properly before this court because, it says, they were not presented to the juvenile court after this Court's order of remand. We believe that it would be a hollow victory to grant the appellant a remedy that allows him to assert his claims of ineffective assistance of counsel, but then to find that the assertions of ineffective assistance that he now raises are precluded because he did not reallege them to the juvenile court. This was surely not the intent behind the Alabama Supreme Court's opinion. The Alabama Supreme Court acknowledged in its opinion that because no appeal was taken from the transfer order, the Rule 32 petition was the only practical method available by which the appellant could challenge the effectiveness his counsel in the juvenile proceedings. All of the appellant's allegations of ineffective assistance of counsel raised in this appeal were presented to the juvenile court in his Rule 32 petition. Under the unique circumstances of this case, requiring the appellant to again present the same claims to the juvenile court that he previously presented in his Rule 32 petition in order to perfect his appeal would be placing a premium on form over substance. Accordingly, we find that the appellant's allegations of ineffective assistance of counsel were not waived by his failure to again present them to the juvenile court after this Court's order of remand.
 "Nevertheless, we are faced with the dilemma of how to evaluate the appellant's allegations of ineffective assistance of counsel. As noted above, the juvenile court dismissed the appellant's Rule 32 petition because it found that the Rule 32 petition was not applicable to juvenile proceedings — the juvenile court apparently never actually addressed the allegations presented in the petition. The whole intent of the Alabama Supreme Court's opinion was that under the circumstances of this case, the Rule 32 petition was the only practical means by which the appellant could challenge the juvenile court's transfer order and the effectiveness of his counsel. We believe that to simply grant the appellant an appeal without first giving him an opportunity to have his allegations considered by the juvenile court renders the Alabama Supreme Court's decision `toothless.'
 "We therefore remand this cause to the juvenile court with instructions that the juvenile court consider the appellant's Rule 32 petition."
(Emphasis omitted.)
[5] The record does not include a motion for a change of venue.
[6] The trial court states in the record that each side had 12 strikes. After its ninth strike, the State informed the court that it had no reason to strike the remaining veniremembers and requested that the trial court randomly execute the State's remaining 3 peremptory strikes.
[7] We note that age serves as a reason for a peremptory strike only, it is not a suspect classification. *Page 498